WALLACE T. MILLER, Appellant, *v.* FRANK A. VANDERLIP, JR., et al., Respondents, Impleaded with Others.

Argued January 8, 1941; decided March 6, 1941.

*William W. Pellet* and *G. Kenneth Brown* for appellant.

*Albert Parker* and *Arthur J. Marangelo* for respondents.

FINCH, J. Upon this appeal the issue is whether the allegations of the complaint are sufficient to state a cause of action. We are not now concerned with the proof of the allegations or the proof of damages which must await a trial.

Two causes of action are alleged. The first for breach of contract, and the second apparently for conspiracy to

breach the same contract. Since the second cause of action cannot stand if the first falls, we come to the allegations contained in the first cause of action. These are as follows:

Plaintiff, a man of considerable experience in designing, manufacturing and selling automobiles, was asked by certain unnamed stockholders of the Reo Motor Car Company, a Michigan corporation, to interest outstanding businessmen in the rehabilitation of the company, which had been operating at a loss for some time. Plaintiff succeeded in interesting six such persons who, for convenience, will be referred to as the defendants although two of their number are now deceased and it is their executors who have been joined as parties defendant. The plan evolved by the parties to restore prosperity to the Reo Company contemplated the hiring of competent business managers by the company. The managers were to be engaged at comparatively small salaries, but in order to induce them to accept positions with Reo, they were to be given options on shares of stock which up to that time had remained unissued. On January 28, 1937, plaintiff and defendants, none of whom is alleged in the complaint to be either a stockholder or a director of Reo, entered into an agreement among themselves to organize a stockholders' committee which would seek to bring about an increase in the number of directors on the company's board, and thereafter the parties were to urge upon the new board the adoption of the plan referred to above. The parties agreed to carry out the object of their agreement " insofar as within their power lay."

The complaint alleges that it was agreed that the best interests of the company called for the adoption of the plan and the election of plaintiff as president and general manager for a term of three years at an annual salary of $9,000 plus options at a given price on 38,000 unissued shares. It was further agreed that plaintiff should advance a substantial sum to defray the expenses of the stockholders' committee and should devote his efforts to bringing about the desired increase in the number of directors. The com-

mittee was organized, plaintiff advanced to it the sum of $3,000 and devoted his efforts as agreed. As a result of the work of the committee and of plaintiff, the board was increased from five to nine members, and the stockholders elected a board which was satisfactory both to the committee and to the parties to this action. Defendants, however, failed to take the next step called for by the agreement, to wit, to advocate before the new board the adoption of the plan and of plaintiff's election as president and general manager. In consequence of the defendants' failure to perform their agreement, plaintiff has received no offer of employment and no options upon the company's unissued stock. It is also alleged that " had the defendants * * * caused to be submitted to said Board of Directors the plan * * * and in good faith advocated its adoption, the said plan would have been approved and adopted by said Board of Directors acting for the best interest of said corporation."

These are the allegations which it is said do not state a cause of action because (1) the agreement sued upon is illegal, and (2) the agreement, even if legal, is too vague and illusory and hence does not amount to a contract upon which an action may be maintained. We take up first, whether the agreement was unenforceable on account of illegality.

Respondents rely upon cases which establish the well-settled doctrine that directors of a corporation may not be divested of their discretion in the management of the company's affairs. (*Manson* v. *Curtis*, 223 N. Y. 313; *Fells* v. *Katz*, 256 N. Y. 67; *McQuade* v. *Stoneham*, 263 N. Y. 323; but cf. *Clark* v. *Dodge*, 269 N. Y. 410.) We are of course limited to the allegations in the complaint and may not speculate in regard to matters not contained therein. Nowhere in the complaint is it alleged that any of the defendants were directors of the Reo Motor Car Company at the time when the agreement was to be completed by the defendants' advocacy of the plan. Hence, the principle relied upon does not govern the situation and the com-

plaint may not be deemed to allege an illegal agreement upon this score. While the directors owe a duty to all of the stockholders to act only according to their best judgment, there is no reason why any stockholder, or any outsider for that matter, may not urge upon the board considerations in favor of or opposed to a proposed course of action in the interest of the company. It cannot successfully be contended that directors must act without the advantage of taking into consideration the views and information furnished by others. To listen to the arguments advanced by others is not to abandon discretion or judgment in the premises, but merely to weigh as many factors as possible.

It is to be noted that nowhere in the complaint is it alleged that the defendants have been stockholders of the Reo Motor Car Company at any time. The position of the defendants, therefore, is that of the advocate who undertakes to present the view of another. Whether such an agreement is lawful under all circumstances need not now be decided, for it is further alleged that the defendants undertook to urge the plan in question in the belief that its adoption would be for the best interest of the company. In the case at bar there is only the very narrow question as to whether men of standing in the business world may undertake to urge a given line of advice upon a company in which they have no interest, and to urge a course of action from which no apparent profit will accrue to the advocates.

But even if it were to be assumed that the defendants were stockholders, and even if it were to be assumed that the defendants would profit as a result of the adoption of the plan, would it necessarily follow that the agreement is illegal? There is nothing in the complaint from which it may be inferred that the profits which would flow to the proponents of the rehabilitation plan would not equally flow to all the other stockholders, except for the fact that the plaintiff would obtain the emoluments of an office, which obviously cannot accrue to more than one or, at

most, to a very limited number. In this connection it is to be noted that not even the benefits which would accrue to the plaintiff would be obtained at the expense of any of the other stockholders. The complaint alleges that the compensation which would have been paid to plaintiff would have been a fair and just remuneration for his services to the company. In no sense, therefore, would any one group of stockholders be the recipients of an advantage at the expense of the others.

The only possible objection upon this phase, therefore, is that the agreement is necessarily bad because certain stockholders bound themselves to exercise their judgment in a given way in advance of the time when they would be called upon to exercise that judgment in the course of their activities as stockholders. A similar question was raised in *Brightman* v. *Bates* (175 Mass. 105) where it was argued that an agreement was illegal because it bound some of the stockholders to surrender their voting rights to a committee which was to name the board of directors at each annual meeting for three years. " It is as legitimate for a majority of stockholders to combine as for other people. The fact that they expect ' gain and advantage ' * * * to accrue to them, does not make the combination unlawful. That expectation and intent would have that effect only if the gain was to be at the expense of the corporation, or in some way was intended to work a wrong to the other stockholders * * *. It is suggested that this was an unlawful attempt by the contracting parties to deprive themselves in advance of their deliberative power and duty as stockholders, and to submit themselves to the dictation of five men who in the future might not even be members of the corporation. * * * The question before us is not whether it would be possible to carry out the contract in a way which would have made the contract bad if specified in it, but whether it was impossible to carry out the contract in a way which might lawfully have been specified in advance. We put the question in this form because there is no doubt that the subscribers [stockholders]

might actually have done the things stipulated without giving anyone a right to complain. That is to say, they might have held their stock and voted the previous understanding according to the advice of the committee, as long as they chose. The question is what they might contract to do; * * * We know nothing in the policy of our law to prevent a majority of stockholders from transferring their stock to a trustee with unrestricted power to vote upon it. [Cas. cit.] Supposing that the committee had been trustees, what would the syndicate agreement have amounted to then? Merely an agreement by each of the trustees to vote as they should jointly agree to vote, and an agreement by the subscribers not to demand back their shares for three years. The latter term certainly is not illegal, whether valid or not. * * * As to the arrangement for the trustees uniting to elect their candidates, the decisions of other states show that such arrangements have been upheld, and we do not think that it needs argument to prove that they are lawful. If stockholders want to make their power felt, they must unite. There is no reason why a majority should not agree to keep together. [Cit. cas.] " (Per HOLMES, Ch. J., at pp. 110–111.)

A further point of illegality is said to be found in the failure of the complaint to allege that the plaintiff, at the time of the agreement, was, or, in the contemplation of the agreement, was to become, a director of the corporation and hence eligible for election as president. (Stock Corporation Law, § 60; Cons. Laws, ch. 59.) The answer to this is two-fold. *First,* The Reo Motor Car Company is a Michigan corporation and we may not indulge in a presumption that the statutory law of Michigan is the same as of this State. And *second,* even if plaintiff were ineligible to assume the post of president of the company, he would still remain eligible for the post of general manager. The agreement, therefore, may be said to call for an illegal act not in the sense that it sought to induce another to violate a legal duty or to subvert the legal rights of another, but only in the sense that it sought to accomplish that which was impossible

of attainment. The fact that plaintiff might not be eligible to be both president and general manager is no excuse for the failure of the defendants to urge the selection of plaintiff for the position of general manager, albeit in that event the remuneration of plaintiff probably would not have been the same as if he had occupied both positions. Thus if for a valid consideration " A " makes two promises to " B," and one of the two promises calls for an impossible performance, there is no reason why " A " should not be called upon to perform in so far as he is able to do so.

The point is also made that plaintiff was to be engaged for a term of three years, whereas section 60 of the New York Stock Corporation Law provides that " The directors may require any such officer [including president], * * * to give security for the faithful performance of his duties, and may remove him at pleasure." Even if it be assumed, but without deciding, that plaintiff could not have been engaged for the full term of three years, the answer is the same as in regard to plaintiff's ineligibility for the position of president.

Whether the agreement is illusory.

It is said that there is no specific allegation of a promise on the part of the defendants to urge the new board of directors to adopt the rehabilitation plan. We do not so read the complaint. On the contrary, the complaint may be fairly said to allege such a promise on the part of defendants. It is next contended that even if the defendants did so undertake, the plaintiff fails properly to allege that the defendants could control the action of the board of directors or that the plaintiff was eligible for the positions to which he aspired. So far as concerns the plaintiff's ability to perform, there is due allegation that he was at all times ready, able and willing to perform the agreement on his part. Even if this allegation were deemed insufficient, there is no objection apparent to plaintiff's qualifications for the office of general manager.

That the defendants did not control the board of directors is not pertinent to the cause of action alleged in the complaint. The plaintiff's grievance is not simply his failure

to receive from the company the offer of employment and its attendant emoluments, but the failure of the defendants to keep their promise to urge plaintiff's employment upon the members of the board. The extent of plaintiff's damages will, of course, depend upon the proof adduced in support of the allegations, and it is now unnecessary to determine, as was said herein at the outset, the manner in which plaintiff will be able to establish the damages he has suffered. It is sufficient that the right to have another person advocate one's own advancement is a right of some value. It may not be assumed that another person's advocacy of one's cause is a thing of value only when the advocate is a professional lawyer and not when the other person is a man distinguished in the world of business or possessing other special qualifications. The promise of defendants, therefore, was a promise of some value and it must be assumed that by their promise the defendants agreed to perform in accordance with their abilities and in good faith. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.)

The first alleged cause of action, therefore, is sufficient.

The second cause of action is only against some of the defendants named in the first cause of action, plus one person not so named. Although the plaintiff may have a cause of action for interference with his contract rights, on the part of the person not named in the first cause of action, plaintiff himself apparently does not so construe the second cause of action. Instead, when fairly read and as construed by plaintiff, the second cause of action seeks to restate as a conspiracy that which amounts to nothing more than the breach of contract alleged in the first cause of action. The second cause of action adds nothing by way of legal liability, and only seeks to explain the possible motives of defendants for their failure to perform the agreement sued upon in the first cause of action. Since plaintiff's cause of action for breach of contract is his entire grievance against the defendants he may not split his causes of action based upon a single grievance and, therefore, the second cause is bad and should be dismissed.

The judgment of the Appellate Division, in so far as it dismisses the first cause of action, should be reversed, and the motion to dismiss such cause of action denied, with costs in this court and in the Appellate Division; otherwise the judgment of the Appellate Division should be affirmed.

LEHMAN, Ch. J. (dissenting). Upon motion of the defendants the complaint has been dismissed on the ground that it fails to state facts sufficient to constitute a cause of action. The complaint alleges that the defendants made a contract with the plaintiff, that they breached the contract and that " by reason of " such breach the plaintiff suffered damages. The questions which we must consider upon this appeal are whether it appears upon the face of the complaint that the alleged contract was for an unlawful purpose and, therefore, unenforceable, and whether the contract was of such nature that the general rule that damages may be presumed to result from a breach of contract does not apply.

The allegations of the complaint, so far as relevant to those questions, are that the plaintiff succeeded in interesting the defendants " who were prominent and well-known business men " in a plan for the rehabilitation of Reo Motor Car Company. All the parties agreed that the plan suggested by the plaintiff was " the best way to bring about the rehabilitation of said corporation and to place it in a position where it could operate at a profit to the stockholders." They further agreed that the plaintiff " was a proper and competent party to become President and General Manager of said corporation in accordance with the said plan." " In order to carry out the foregoing objects * * * the defendants * * * entered into an agreement among themselves and with the plaintiff, in consideration of the mutual promises and agreements, to organize a committee of stockholders of the Reo Motor Car Company, for the purpose, insofar as within their power lay, of bringing about an increase in the authorized number of directors in the Reo Motor Car Company, and

the election of directors for the purpose of effecting the rehabilitation of the Reo Motor Car Company by the consideration of the plan substantially as outlined by said parties; and it was further agreed by and between the plaintiff and said parties that each of them would and should endeavor in a legal and proper manner to effect such increase of directors and the adoption of said plan, and thereupon such committee was organized."

The complaint further alleges that the parties agreed among themselves and with the plaintiff that it would be for the best interest of said corporation to have said corporation enter into a compact whereby the plaintiff should act as president and general manager of the corporation for three years at a salary of $9,000 per year; that the board of directors should authorize the issuance of calls or options for three years on 200,000 shares of unissued stock of said corporation at five dollars per share, to be used for the purpose of obtaining the services of competent and qualified employees, and that the plaintiff should receive calls on 38,000 shares of such stock for his services to the corporation and as additional consideration for his agreement to act as president and general manager. The plaintiff also alleges in his complaint that as a result of the efforts of the committee and of the plaintiff, the board of directors was increased from five members to nine members, and at the annual meeting of the stockholders a board of directors was elected which " was satisfactory to the committee and to said parties." The defendants, however, " failed to cause said plan to be submitted to said board of directors and failed to advocate its adoption by said board," and, it is alleged, " *by reason thereof* said plan was never considered or adopted by said board and the plaintiff was never offered any contract with said corporation for his services as President and General Manager, or in any other capacity."

We must assume the truth of the allegations of the complaint that the plan was calculated to advance the best interests of the corporation. The board of directors would have been justified in accepting such a plan, with such

modifications in the terms of any contract made with the plaintiff in order to secure his services as president and general manager, as might perhaps be required by the law of the State. Co-operation by stockholders, directors or "prominent and well-known business men," perhaps without any direct interest in the corporation, to promote a plan which all believe would best serve the corporation and its stockholders, is certainly not prohibited by law, or against any public policy. The question remains, however, whether the defendants could lawfully bind themselves under penalty of damages to continue to co-operate until the plan was actually adopted. If the complaint had alleged that the plan contemplated that the defendants should be elected or re-elected as directors, the vice of an agreement made by them before election to advocate and attempt to cause the adoption of a particular plan of future action by the corporation and to elect a particular man as president would be apparent. Directors may not, in advance, fetter a discretion which they are bound to exercise for the benefit of the corporation. It is said, however, that here the complaint does not allege, and that we may not assume, that the defendants were either directors or stockholders. That may be true, but it does allege, as I have pointed out, that the defendants were "prominent and well-known business men" and that the plan was never considered or adopted by the board *because* the defendants did not advocate it. The alleged wrong to the plaintiff is that the defendants failed to promote the adoption of the plan by the use of influence or power which was sufficient and which the parties contemplated would be sufficient to secure its adoption. Otherwise the plaintiff would not have suffered any damages by reason of the failure of the defendants to carry out their alleged promise. The problem which we must determine is whether men with such influence or control making such a promise, are subject to damages for failure to carry it out.

No question of whether the defendants' alleged failure to carry out their alleged promise was due to a desire to

obtain profit through the adoption of a different plan by the corporation, should be permitted to obscure the question of whether the promise is binding and enforceable under our law.   Change of heart or of opinion, even though based on sound reasons, will not excuse the failure to perform a binding promise, nor will selfish or even corrupt motives create liability for failure to carry out a promise which is not binding.   If the allegations of the complaint are sufficient to constitute a cause of action, then proof that the defendants in good faith came to the conclusion that the plan which they agreed to promote was not calculated to promote the interests of the corporation as well as the plan which they subsequently advocated, would constitute no defense.   I cannot escape the conclusion that it is contrary to public policy to permit a man seeking to become president and general manager of a corporation to obtain from others, be they directors, stockholders or "prominent and well-known business men," who can influence or direct action by the corporate board of directors, a binding promise to advocate his employment for a previously agreed upon compensation.   A disappointed seeker of corporate office should not be allowed to recover damages resulting from loss of the compensation or profits which he would have received if the men who had promised to promote his candidacy and who had influence sufficient to induce the board of directors to elect him had not thereafter chosen to present and advocate a different plan for corporate action.

The judgment of the Appellate Division should be affirmed.

RIPPEY, CONWAY and DESMOND, JJ., concur with FINCH, J.; LEHMAN, Ch. J., dissents in opinion in which LOUGHRAN and LEWIS, JJ., concur.

Judgment accordingly.