**SAVARIN CORPORATION, Plaintiff,**

v.

**NATIONAL BANK OF PAKISTAN and
S. H. A. Sharbatly, Defendants.**

**No. 67 Civ. 1371.**

United States District Court
S. D. New York.

Oct. 3, 1968.

Charles L. Trowbridge, Brooklyn, N. Y., for plaintiff.

Cravath, Swaine & Moore, New York City, for defendant, National Bank of Pakistan, John W. Barnum, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Defendant National Bank of Pakistan (hereinafter "the Bank") moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on all causes of action naming the Bank as defendant, upon the grounds that there exist no genuine issues of material fact and that the Bank is entitled to judgment as a matter of law. For the reasons hereinafter stated the motion is denied with respect to all causes of action.

Plaintiff Savarin Corporation (hereinafter "plaintiff") entered into a contract on September 20, 1966, with defendant S.H.A. Sharbatly (hereinafter "Sharbat-

ly") for the sale by plaintiff to Sharbatly of approximately 6,000 tons of wheat, 3,000 tons to be shipped to Dammam, Saudi Arabia and 3,000 tons to be shipped to Jeddah, Saudi Arabia [the "wheat contract"]. Sharbatly agreed to establish promptly letters of credit to effect payment and to advise plaintiff by cable of the establishment of these credits.

Sharbatly cabled plaintiff on September 22, 1966, informing plaintiff that the Dammam credit would be opened September 25, 1966 and the Jeddah credit September 29, 1966.

On September 26, 1966, plaintiff received two communications from the New York branch of the Bank. One related to the Jeddah branch letter of credit No. 3697, of which relevant parts read:

"[printed] We are in receipt of a cable/wire from our correspondent indicated above which reads as follows:

'[typewritten] WE ESTABLISH CONFIRMED IRREVOCABLE CREDIT THREESIXNINE SEVEM [sic] SHA VSHARBATLY JEDDAH SAVARIN CORPORATION ELEVEN BROADWAY NEWYORK FOUR NY AMOUNT ABOUT USDOLLARS ONEFIVEFOURFOURTWOFIVE SHIPMENT ABOUT ONEFIVEZEROZERO METRIC TON HARDWINTER NUMBER ONE OLD GRADE WHEAT NEWCROP DARKRED BIG GRAIN PRICE USDOLLARS ONZEROTWO [sic] CENTS NINETYFIVE PER MTON C AND F DAMMAM USAPORT DAMMAM VALIDITY THIRTIETH NOVEMBER FIFTEENTH DECEMBER SIXTYSIX DETAILS AIRMAILING'"

Also printed on the communication was the following:

"Please note that the above is given to you in accordance with instructions of the above mentioned correspondent and conveys no engagement by us."

And:

"This credit is subject to the Uniform Customs And Practice For Documen-

tary Credits (1962 Revision). International Chamber of Commerce Brochure No. 222."

The second communication, on a similar form, related to the Jeddah branch credit No. 3698 and reads substantially the same.

On October 13, 1966 plaintiff received two communications from the Bank's New York branch on forms similar to those received September 26, 1966, relating to Jeddah branch credit Nos. 3713, 3717. The relevant parts of No. 3713 read:

"[printed] We are in receipt of a cable/wire from our correspondent indicated above which reads as follows: [remainder typewritten] This is subject to mail confirmation.

'WE ESTABLISH CONFIRMED IRREVOCABLE CREDIT THREE-SEVENONETHREE SHA SHARBATLY JEDDAH SAVARIN CORPORATION ELEVEN BROADWAY NEWYORK FOUR ' NY AMOUNT ABOUT USDOLLARS ONEFOURNINENINETWOFIVE SHIPMENT ABOUT ONEFIVE-ZEROZERO METRIC TONS AMERICAN HARD WINTER NUMBER ONE OLD GRADE WHEAT NEWCROP DARKRED BIGGRAIN PAKEDIN [sic] NEWDOUBLE JUTEBAGS WITH BLUELABEL ATTACHED ON EACHBAG WEIGHING ONETWOZERO [handwritten "LBS"] GROSS FOR NET PRICE USDOLLARS NINETYNINE CENTS NINETY-FIVE PER METRICTON CANDF JEDDAH LINERTERMS SHIPMENT SHOULD BE IN THREE [handwritten "E"] LOTS EACH LOT NOT EXCEEDING FIVE HUNDRED TONS TEN PERCENT MORE OR LESS USAPORT JEDDAH SHIPMENT SHOULD BE EFFECTED BY FIRSTCLASS STEAMER WHICH SHOULD NOTBE OVERTHAN TWENTY YEARSOLD TRANSHIPMENT NOTALLOWED PARTSHIPMENT ALLOWED SHIPMENT THIRTIETH NOVEMBER NEGOTIATION FIFTEEN DECEMBER SIXTYSIX SHIPPING DOCUMENTS TOBE IN TWO GROUPS EACH GROUP ABOUT TWOFIVEZERO TONS TEN PERCENT MORE OR LESS DETAILS AIRMAILING' "

The communication relating to No. 3717 was substantially similar.

On October 17, 1966, plaintiff received from the Bank's New York branch two communications on the same form as described above relating to credits Nos. 3697, 3698. This communication had a typewritten "x" in two squares indicating that the printed language immediately adjacent was applicable. The printed language so indicated provides:

"[x] At the request of our correspondent indicated above, we are enclosing their letter of credit established in your favor.

＊　＊　＊　＊　＊　＊

[x] 'This is a mail confirmation of the credit opened by cable through us. It is only available for such amount as has not already been availed of under such cable advice and may not be availed of at all unless attached to and as part of our notification dated [typewritten "9/26/66"] of such cable, the two jointly constituting the outstanding amount of this credit.' "

Attached to each of these communications was a formal document issued by the Jeddah branch headed:

"This Is In Confirmation Of Our Cable Of Date And Is Negotiable Only If Accompanied By Cable Advice. Confirmed Irrevocable Credit No. 003697 Date 25–9–1966"

This document, in its relevant provisions, reads as follows:

"[printed] We have opened our confirmed and irrevocable credit without recourse in your favour available to the sum of [typewritten "Abt.$.154425=00"] ＊ ＊ ＊ by your drafts in duplicate to be drawn on [typewritten

"S.H.A. SHARBATLY JEDDAH"] at sight for full invoice cost of shipment by [typewritten "A Steamer"] purporting to be [remainder typewritten unless otherwise indicated] About 1500 Metric tons American Hard Winter Number One old Grade Wheat New Crop dark red big grain packed in new double jute bags with blue label attached on each bag weighing 120 Lbs gross for net at $.102.95 Per Metric ton C. AND F. DAMMAM Liner terms, shipment should be in three lots each lot not exceeding 500 tons 10% more or less.

\*     \*     \*     \*     \*     \*

Insurance is locally done by the M/s. Hussein Aouini & Co., Jeddah, represent to General Insurance Society for the near east, under their policy No. 1111J dated 9th October, 1966. They should be promptly advised the name of the carrying steamer quoting their policy number and a copy of this advice should accompany the relative documents \* \* \*.

\*     \*     \*     \*     \*     \*

Shipping documents to be in two groups each group about 250 tons 10% more or less."

On October 25, 1966 plaintiff received two communications from the Bank's New York branch with respect to credit Nos. 3713, 3717 similar to that received October 13, 1966 relating to credit Nos. 3697, 3698, with the material provisions of these documents substantially the same as detailed above.

Sometime in October, 1966 plaintiff was advised by the Bank that the credits issued required separate shipping documents evidencing separate shipments on separate steamers for each five hundred metric ton lot and that such documents were necessary before plaintiff could draw on the credits.

Plaintiff never shipped the wheat and sold its wheat futures at a loss, the market price having sharply declined during the months October–December, 1966.

Plaintiff then instituted this action claiming that the interpretation—placed on the terms of the four formal confirmations calling for shipment in "three lots each lot not exceeding 500 tons 10% more or less" and shipping documents to be "in two groups each group about 250 tons 10% more or less" whereby the Bank advised that no more than 500 tons per steamer could be shipped—was erroneous and that this insistence, therefore, constituted an anticipatory repudiation rendering the Bank liable for damages.

Plaintiff also alleges a second cause of action against the Bank, asserting that credits Nos. 3697, 3698 did not contain the provisions in dispute and that the complete contract between the Bank and plaintiff is that contained in the communications of September 26, 1966.

Plaintiff alleges a third cause of action against Sharbatly charging him with breach of their contract, in that Sharbatly procured the insertion into the letters of credit the clause relating to shipment in lots not exceeding 500 tons. Jurisdiction over Sharbatly never having been acquired, and the Bank not having been named a defendant in this cause of action, the Court passes over its details.

Plaintiff lastly asserts a cause of action against both Sharbatly and the Bank, alleging that they did "conspire, combine, confederate and agree to, and pursuant thereto did, delay, modify unilaterally, back-date, misinterpret, misapply and otherwise breach the Agreement [contract for sale of wheat] and letters of credit \* \* \*" It is then alleged that this "was practiced by defendants wilfully, wantonly and with malice and intent to injure and inflict losses upon plaintiff." Punitive damages, in addition to the specific damages pleaded, are sought.

## I

The Bank submits that, as a matter of law, its interpretation of the disputed terms is correct and that, therefore, it has no liability to the plaintiff on the first cause of action. The Bank asserts

that its interpretation is confirmed by plaintiff's alleged acknowledgement and efforts to have the credits amended and is further supported by the prior business dealings between the parties. It makes reference to various conversations, inquiries, communications, letters and cables that plaintiff's president, Mr. Savarin, had with, made and sent to various employees of the Bank both in New York and Jeddah; with Sharbatly; and with officials of the Saudi Arabian Embassy and King Faisal of Saudi Arabia.

These "transactions" are detailed throughout pages and pages of affidavits, depositions, documentary exhibits, answers to interrogatories served by both parties, and in counsel's summaries of the "facts" in various memoranda, including pre-trial memoranda.

Plaintiff has disputed his alleged acquiescences, acknowledgements and admissions and, indeed, claims that the Bank, through some of its employees, had in writing and otherwise concurred in plaintiff's interpretation. It disputes the relevancy of prior dealings and, instead, argues that custom and usage in the trade—which was merely alleged and not proven or disproven—permit (in the absence of express provisions to the contrary) shipment in one, or more than one, steamer. It, too, relies on various papers in this already complicated and voluminous record.

The arguments of both parties make apparent that the issue of the proper interpretation must, in large part, be resolved on the basis of the contemporaneous interpretation placed on the terms by the parties; custom and usage in the trade; and relevant prior dealings between the parties. These pose questions of material fact which, after intensive review of the papers and after oral argument, this Court believes are disputed and in sharp issue.

■ The Court of Appeals for this Circuit has repeatedly held that disputed questions regarding the parties' intentions should not be adjudicated on a mo-

tion for summary judgment based on affidavits and depositions but rather should await trial. See, e. g., Preston v. United States Trust Co., 394 F.2d 456, (2d Cir. 1968) ; Union Insurance Society of Canton, Limited v. William Gluckin & Co., 353 F.2d 946 (2d Cir. 1965). It is also clear that even where facts are not disputed but the inferences to be drawn therefrom are important and at issue, summary judgment is inappropriate. See, e. g. American, Manufacturers Mutual Ins. Co. v. American Broadcasting— Paramount Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967) ; Empire Electronics Co., Inc. v. United States, 311 F.2d 175, 180 (2d Cir. 1962). In this case, both plaintiff and the Bank agree that various letters and cables were sent by plaintiff to the Bank (both branches), that certain letters and cables were sent from the Bank (both branches) to the plaintiff, and that there were letters and cables sent between the branches. The inferences to be drawn from this correspondence in terms of who concurred with whose interpretation of the credits (if anyone in fact did) is crucial to determining which interpretation governs this case, and as such these inferences are disputed material facts which preclude summary judgment.

■ There is yet another strong and persuasive reason for denying the motion for summary judgment on this claim. The record as it now stands is lengthy, often contradictory, and incomplete in terms of certain important matters of proof. The issue of law involved is technical and complicated; the documentary exhibits which constitute the core of this claim are worded in abbreviated terminology, undoubtedly steeped with gloss affixed by customary usage which has not been presented to the Court, or shown not to exist. There are numerous documents which attempt to throw light on the ultimate issue, but which have, in fact, tended to befog rather than clarify. In such a case, summary judgment should be denied. E. g., Koleinimport "Rotterdam" N. V. v. Foreston Coal Export Corp., 283 F.Supp. 184 (S.D.N.Y.

1968). See also Lapidus v. Jesup & Lamont, 276 F.Supp. 762 (S.D.N.Y.1967).

At trial, counsel will have the opportunity to "bring into sharper focus certain issues of importance which have been obscured by the voluminous affidavits with their statements, counterstatements and alternative positions, and the conflicting conclusions that the parties contend are to be drawn from the multitude of facts and statistics presented." United States v. Bethlehem Steel Corp., 157 F.Supp. 877, 879 (S.D.N.Y.1958). The motion with respect to the first cause of action, must therefore be, and hereby is, denied.

## II

The Bank's motion for summary judgment on the second cause of action similarly must be denied. Plaintiff contends that the communications of September 26, 1966 with respect to Nos. 3697 and 3698, were notifications of irrevocable letters of credit already established by the Bank's Jeddah branch; and that, as such, the later formal confirmations (which contained the provisions relating to shipment in lots) constituted material modifications which could not affect the Bank's liability. The Bank, on the other hand, argues that these communications were mere "preliminary notifications of the credit to the beneficiary," which under Uniform Customs and Practice For Documentary Credits (1962 Revision) ["UCP"] article 6 may be issued when the instructions received are incomplete or unclear and which instructions may be issued without responsibility. It bases its argument on the fact that the cable said "Details Airmailing." Moreover, the Bank contends that plaintiff has acknowledged that these communications were incomplete in that Mr. Savarin admitted that he could not tell from them what documents were required or how the bags were to be marked.

Whether the cable received by the Bank's New York branch from its Jeddah branch and subsequently relayed to plaintiff embodied all the terms of the credit or was merely a preliminary advice of the salient terms appears to be a question of intention which cannot be definitively resolved from the face of the document and is not answered in any of the papers submitted upon this motion. While the cable does state "Details Airmailing," the communications sent to plaintiff do not state that the cables are only preliminary notifications issued without responsibility. The phrase "Details Airmailing" also appears on the communications of October 13, 1966, respecting Nos. 3713 and 3717 which do contain all of the material provisions contained in the formal confirmations sent from the Jeddah branch. In fact, the covering form sent to plaintiff from the New York Branch on October 17, 1966 with each formal confirmation indicates both that the enclosed constitutes the letter of credit and that the previous cable had opened the credit.

As is more fully explained in section I of this Opinion, the record is voluminous and contains often conflicting documents which do not clearly and unambiguously present an issue of law that can be determined without further elucidation of the record. Whether the cables relayed on September 26, 1966 were intended as complete irrevocable credits or merely preliminary notification are questions of fact best determined upon a plenary trial. The motion with respect to this cause of action hereby is denied.

## III

Plaintiff's fourth cause of action names both Sharbatly and the Bank as defendants and alleges a conspiracy to breach the wheat contract and letters of credit. The Bank's motion for summary judgment asserts that this cause of action is insufficient in law.

Neither the notice of motion nor the Bank's memorandum in support of the motion for summary judgment refers to Fed.R.Civ.P. 12(b) (6) or states that the motion is one to dismiss the cause of action for failure to state a claim upon which relief can be granted. Rather, the Bank moves for summary judgment under Rule 56 apparently on

the ground that, since the claim is insufficient in law, no *material* fact is in issue. Accordingly, the Court is not restricted to the face of the pleadings but may consider all affidavits, depositions and other papers submitted to it on this motion.

Plaintiff's claim is stated in a conclusory manner. The complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2). The complaint does not allege any facts other than that Sharbatly and the Bank wilfully, wantonly and with malice intended to injure and inflict losses upon plaintiff in delaying, modifying unilaterally, back-dating, misinterpreting and misapplying the wheat contract and letters of credit. Because the complaint is not articulately worded, it is unclear whether the claim is that Sharbatly and the Bank conspired to breach the wheat contract, or the letters of credit, or both. Paragraph THIRTY-NINE of the complaint, alleges that the intent and purpose of the conspiracy were to enable Sharbatly to "evade performance of his obligations [under?] the Agreement by making it impossible for plaintiff to ship and obtain payment for the aforesaid wheat in accordance therewith, all contrary to and in gross violation of said defendants' obligations under said letters of credit and said Agreement." Plaintiff thus alleges a conspiracy to prevent performance of the wheat contract alone, yet, makes reference to the letters of credit contracts.

■ New York law is clear that a claim alleging a conspiracy to breach one's own contract is insufficient with respect to a defendant who allegedly breached the contract. See, e. g., Miller v. Vanderlip, 285 N.Y. 116, 125, 33 N.E. 2d 51 (1941); Caprice Imports, Inc. v. Soc. Acc. Semplice Calzaturificio Vibelsport, 13 App.Div.2d 952, 216 N.Y.S.2d 498 (1961); cf. Waller v. Professional Insurance Corp., 296 F.2d 545 (5th Cir. 1961). The rationale is that, since plaintiff's damages can be recovered in an action for breach of contract, the con-

tract action constitutes plaintiff's entire grievance, Miller v. Vanderlip, supra, and plaintiff may not thus seek to add a claim in tort, the effect of which will be to enable recovery of punitive damages in a contract action, a result specifically precluded by New York statute. See Canister Co. v. National Can Corp., 96 F.Supp. 273, 274 (D.Del.1951).

Plaintiff argues, however, that the New York cases have not dealt with tortious conduct, but merely involved allegations of conspiracy in an ordinary breach of contract case. Plaintiff argues that because it alleges tortious conduct, its conspiracy claim is viable. The cases, however, do not support such a distinction. In Friedman v. Roseth Corp., 270 App.Div. 988, 62 N.Y.S.2d 663 (1946), the court dismissed a cause of action alleging a conspiracy to breach a contract of employment plaintiff had with defendants, stating:

"If an employment contract and breach are established, plaintiff will prove a cause of action, regardless of malice or conspiracy, and if he fails to prove a contract and breach, he cannot, on the allegations of the complaint, make a cause of action out of malice or conspiracy. The allegations of malice and conspiracy are, therefore, inconsequential or insufficient." 270 App. Div. at 989, 62 N.Y.S.2d at 665.

In Kay v. Sussel, 22 Misc.2d 627, 199 N.Y.S.2d 180 (Sup.Ct.1960), the court noted that the fact that a breach occurred pursuant to a tortious inducement does not add anything to plaintiff's rights against that defendant. And in Miller v. Vanderlip, supra, the court noted that the allegations of tortious conspiracy add nothing by way of legal liability; they only seek to explain defendant's motives for his failure to meet his obligations. See 285 N.Y. at 125, 33 N.E.2d 51.

Plaintiff may be seeking only to hold the Bank liable for inducing breach of plaintiff's contract with Sharbatly to which the Bank was not a party, and to hold Sharbatly liable for inducing breach of plaintiff's contracts with the Bank. If this be the case, plaintiff should be

able to state in "short and plain" terms with averments that are "simple, concise, and direct" [Fed.R.Civ.P. 8(a) (2) and (e)] facts which spell out acts of tortious misconduct inducing breach of contract in order for the claim to be legally sufficient. See Spitzer v. Londa Realty Corp., 8 A.D.2d 713, 185 N.Y.S.2d 921 (1959).

Moreover, it would seem that plaintiff may not join the Bank and Sharbatly in this claim. In Toffel v. Odzer, 154 N.Y.S.2d 1002 (Sup.Ct.1956), the court dismissed a claim against two defendants for conspiring with a contracting party defendant to breach a contract between plaintiff and that defendant. The court had previously dismissed the claim against that defendant and stated that, if the conspiracy claim is insufficient as to the contracting party, it is inadequate as to the other two defendants. Indeed, in Schulman v. Royal Industrial Bank, 280 App.Div. 401, 113 N.Y.S.2d 489 (1952), the court found a conspiracy claim insufficient against non-contracting party defendants though the contracting party defendant had been dropped by plaintiff as a defendant to this cause of action. The court declared that the plaintiff had mistaken the theory of liability and should proceed on a theory of inducing breach of contract, citing Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1 (1930), which is relied on by plaintiff in this case as sustaining the legal sufficiency of its cause of action. In *Hornstein* the court held that the cause of action was sufficient when construed to allege a tortious inducement of breach by non-contracting party defendants, in a case where the contracting party was not joined as a defendant.

■ Because the fourth claim, as presently pleaded, is imprecise, unclear and ambiguous, it would be improvident for this Court to rule on its sufficiency as a pure question of law, especially in view of the possibility that plaintiff may be able to state facts showing that it is entitled to relief.

Accordingly, leave is hereby granted to plaintiff to amend its fourth claim.

Plaintiff may, if so advised, file such amended complaint within twenty (20) days from the date of the filing of this opinion.

The Bank's motion for summary judgment on this fourth claim is hereby denied in all respects, without prejudice to a renewal thereof or to a motion to dismiss, if said defendant is so advised, after plaintiff shall have amended the fourth claim.

So ordered.