S & S Hotel Ventures Limited Partnership, Appellant, v 777 S.H. Corp., Respondent.

First Department, May 23, 1985

### APPEARANCES OF COUNSEL

*Allen Green* of counsel (*Jacob H. Zamansky* with him on the brief; *Bell, Kalnick, Beckman, Klee & Green,* attorneys), for appellant.

*Jonathan M. Herman* of counsel (*Scott H. Wyner* with him on the brief; *Demov, Morris, Levin & Hammerling,* attorneys), for respondent.

### OPINION OF THE COURT

Fein, J.

Plaintiff S & S Hotel Ventures Limited Partnership (S & S) appeals from an order granting defendant's motion pursuant to CPLR 3211 (a) (7), dismissing plaintiff's second cause of action for failure to state a cause of action.

The first cause of action alleges that on February 17, 1981 plaintiff S & S and defendant 777 S. H. Corp, a Delaware corporation owned by Citibank, N.A., entered into a loan agreement. Plaintiff borrowed $15 million for the purpose of making improvements on plaintiff's hotel in Houston, Texas. The loan was evidenced by a promissory note, secured by a deed of trust. The deed of trust provided that if plaintiff should sell or otherwise transfer the hotel without defendant's consent, the principal sum of the loan plus interest would become due at defendant's option. It was further provided that such consent would not be unreasonably withheld or delayed by defendant, and that "in determining whether to grant or withhold its consent, the [defendant] may consider, without limitation on the generality of the requirement of consent, the financial ability of the proposed purchaser, transferee, or lessee, its character and professional/personal reputation, and its experience in the operation of commercial real estate of a similar size and nature."

In October 1982, plaintiff entered into an agreement to sell the property to Denitex International Corporation (Denitex) for $6 million over and above certain notes, with a closing date of November 30, 1982. Plaintiff retained an option to extend the closing date for up to 60 days. The agreement further provided that neither plaintiff nor Denitex would be required to perform under the agreement unless plaintiff received written consent to the sale from defendant within 10 days prior to the closing date.

By letter dated October 19, 1982, plaintiff requested defendant's consent to transfer the property to Denitex or to other named individuals or entities. On October 29 defendant responded in writing by requesting information concerning the proposed purchaser. On or about November 12, 1982, defendant received the requested information from plaintiff. Although defendant knew the scheduled closing date was November 30, 1982, it did not respond to the request for consent. Plaintiff adjourned the closing date of the proposed sale to December 16, 1982. By letter dated December 10, 1982, defendant refused to consent to the transaction. It is alleged that defendant advised the plaintiff that consent was delayed and withheld so that defendant might provide plaintiff with a purchaser named Associated Inns & Restaurants Company of America (AIRCOA).

After informing defendant that it was acting in violation of its contractual obligations under the deed of trust, plaintiff again requested consent by letter dated December 14, 1982, limiting this request to a conveyance to Denitex and/or Daniel Dror. Plaintiff advised defendant that closing was scheduled before

the end of the year. Defendant, by letter dated December 20, requested still additional information. Plaintiff terminated the agreement with Denitex as a result of defendant's alleged unreasonable refusal and delay in consenting.

On January 3, 1983, plaintiff requested that defendant consent to a sale of the property to a joint venture comprised of AIRCOA and First City Developments Corp. Plaintiff stated that the parties desired to close as soon as possible. However, before any reply, AIRCOA advised plaintiff it was no longer interested in the purchase.

On or about February 23, 1983, plaintiff entered into a second agreement with Denitex for the sale of the property, which specified a closing date on or before March 31, 1983. This agreement also provided that neither Denitex nor plaintiff would be obligated to close unless, prior to March 25, 1983, defendant consented in writing to the conveyance.

It is further alleged that in February 1983, defendant stated it would not consent to the proposed transfer unless plaintiff agreed to renegotiate the loan agreement on terms more favorable to defendant.

In March 1983, plaintiff and Denitex amended their agreement to provide, in pertinent part, that (1) Denitex could assign its interest in the property to Sherpolk Joint Venture (Sherpolk); (2) Denitex would waive any requirement that plaintiff obtain defendant's consent to the transaction; (3) the closing date was fixed at March 24, 1983; and (4) the purchase price was reduced by approximately $2 million to the sum of $3,150,000, plus other considerations.

Pursuant thereto, on or about March 25, 1983, plaintiff transferred the ownership of the hotel to Sherpolk and so advised defendant. Thereafter, on or about May 6, 1983, defendant formally waived any default in the deed of trust arising out of the transfer to Sherpolk and consented to the transfer.

Based on these allegations, plaintiff's first cause of action seeks damages in the sum of $3,764,000 for breach of contract for unreasonably withholding and delaying its consent.

The second cause of action repeats all of the foregoing allegations and alleges further that notwithstanding defendant's knowledge of the agreements of sale, defendant intentionally and maliciously interfered with them without justification. It further alleges that such conduct was first designed to favor AIRCOA, another client of Citibank, and subsequently to cause a restructuring of the loan on terms more favorable to defendant. Because of defendant's interference, plaintiff was unable

to close title, pursuant to the first and second agreements of sale with Denitex, and ultimately sold the property at a substantially reduced purchase price pursuant to an agreement in which the purchaser agreed to waive the requirements of obtaining defendant's consent. This cause of action seeks damages in the same sum as the first cause of action, and, in addition, punitive damages of $10 million.

Special Term, in the order appealed from, granted defendant's motion to dismiss the second cause of action for failure to state a cause of action, pursuant to CPLR 3211 (a) (7), because it merely alleged a cause of action for breach of contract, the same as the first cause of action, thus "not legally cognizable". On such a motion the facts alleged are deemed to be true. (*Westhill Exports v Pope,* 12 NY2d 491; *Foley v D'Agostino,* 21 AD2d 60; *Navarro v Fiorita,* 271 App Div 62, *affd* 296 NY 783.)

Special Term relied on *Miller v Vanderlip* (285 NY 116). However, *Miller* is distinguishable in that the second cause of action pleaded there was found merely to "restate as a conspiracy that which amounts to nothing more than the breach of contract alleged in the first cause of action" (285 NY, at p 125).

Here, however, the second cause of action alleges something more than a mere repetition of the defendant's acts as alleged in the first cause of action for breach of contract. The second cause of action on its face states a claim for tortious interference with the performance of a contract. Such a cause of action requires the existence of a valid contract between the plaintiff and a third party, the defendant's knowledge of that contract, and its intentional interference with the performance of that contract by the third party without justification (*Morris v Blume,* 55 NYS2d 196, 199, *affd* 269 App Div 832; *see, Maurer v Hynes,* 34 AD2d 867; *Muller v Star Supermarkets,* 49 AD2d 696, 697). Although here, there was no breach by Denitex, the allegations plainly assert wrongful interference with the performance of the contract between Denitex and plaintiff (*Navarro v Fiorita, supra; see, Cyg-Knit v Denton Sleeping Garment Mills,* 26 AD2d 800). Defendant asserts that a plaintiff claiming such interference must prove the existence of physical violence, fraud, misrepresentation, the institution of a civil suit or criminal prosecution, or the use of forceful economic pressure. However, the cases are not so limited. Although the same acts which constitute the basis for the first cause of action for breach of contract are realleged, the additional allegations that defendant maliciously withheld its consent or delayed such consent for its own benefit are sufficient affirmative action (*Albemarle Theatre v Bayberry*

*Realty Corp.*, 27 AD2d 172). The second cause of action alleges that the delay and failure to consent were intended to benefit a favored customer of defendant or to cause a renegotiation of the loan on less favorable terms. Defendant has done something more than remain inactive (*Albemarle Theatre v Bayberry Realty Corp.*, 27 AD2d, at p 175). Such actions constitute a breach of legal duty existing " 'independent of contractual relations between the parties.' " (*Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 408.) Such legal duty may flow from the contract itself (*Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 390; *Robbins v Ogden Corp.,* 490 F Supp 801).

As stated in *Rich* (87 NY, at p 390): "And yet, it is conceded that a tort may grow out of, or make part of, or be coincident with, a contract (2 Bouvier['s Law Dict 600]), and that precisely the same set of facts, between the same parties, may admit of an action either *ex contractu* or *ex delicto.* (Cooley on Torts, 90.) In such cases the tort is dependent upon, while at the same time independent of the contract; for if the latter imposes a legal duty upon a person, the neglect of that duty may constitute a tort founded upon a contract. (1 Addison on Torts, 13.)"

The second cause of action alleges a breach of duty by defendant to refrain from interfering with plaintiff's contracts of sale, separate and distinct from its breaches of duty under the deed of trust which damaged plaintiff's rights under the contracts of sale. This was something more than a breach of contract by inaction. It is alleged that defendant sought first to induce plaintiff to enter a contract with defendant's favored customer, and then to require plaintiff to renegotiate its loan, thus preventing plaintiff from proceeding with its first and second agreements with Denitex. This constituted not only a breach of defendant's contract but a violation of its duty not to act willfully to destroy plaintiff's contract with Denitex (*Albemarle Theatre v Bayberry Realty Corp., supra*). Moreover, defendant's breach of its contract with the plaintiff can form the basis of a tortious interference with the performance of plaintiff's contracts with Denitex, premised upon allegations that the consent was, with malice, "intentionally and knowingly and for unworthy or selfish purposes" withheld. (*See, Campbell v Gates,* 236 NY 457, 460; *see also, Benton v Kennedy-Van Saun Mfg. & Eng. Corp.,* 2 AD2d 27, 29, where this court stated: "Self-interest may be the legal justification which negatives intent to injure, but of course it cannot afford legal justification for the intent to interfere with a contract by unlawful means.")

Accordingly, the order, Supreme Court, New York County (Andrew Tyler, J.), entered on July 31, 1984, granting defen-

dant's motion to dismiss plaintiff's second cause of action for failure to state a cause of action pursuant to CPLR 3211 (a) (7), should be reversed, on the law, with costs, the motion denied, and the cause of action reinstated.

SULLIVAN, J. P., CARRO and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on July 31, 1984, unanimously reversed, on the law, the motion by defendant to dismiss plaintiff's second cause of action denied, and the cause of action reinstated. Appellant shall recover of respondent $75 costs and disbursements of this appeal.