■ NEW YORK YANKEES PARTNERSHIP, Respondent, v SPORTS-CHANNEL ASSOCIATES et al., Appellants.—Order of the Supreme Court, Bronx County (Alfred J. Callahan, J.), entered October 31, 1986, which, *inter alia,* granted the motion of plaintiff New York Yankees Partnership for a preliminary injunction against defendants SportsChannel Associates *et al.,* is modified, on the law and facts, to deny such injunctive relief, and otherwise affirmed, without costs or disbursements.

New York Yankees Partnership, plaintiff, owns the New York Yankees. SportsChannel Associates, defendant, is a partnership which operates a pay television programming service called SportsChannel. Defendants Cablevision Company and Cablevision Systems Corporation are also in the business of pay television.

This action arises out of a dispute between the Yankees and SportsChannel as to their contractual rights and obligations for televising and broadcasting of Yankee baseball games over the next several years. The Yankees and SportsChannel entered into agreements in 1982 under which SportsChannel was given rights to telecast a substantial number of Yankee games from 1982 through 1996, and in particular, 100 games each year from 1987 through 1996.

Previously, the parties had agreed to decrease the number of Yankee telecasts by SportsChannel for the 1985 and 1986 baseball seasons. They also authorized a commercial broadcasting station, WPIX, to televise a substantial number of games. In anticipation of the 1987 baseball season, the parties

entered into discussions in early 1986 regarding the telecasting of Yankee games in subsequent years. After a dispute between the parties, this action ensued.

In the complaint, the Yankees alleged that they were entitled to rescission of their original contract with SportsChannel on the ground that SportsChannel could not deliver the audience contemplated by the contract since no cable wiring is in place in the market identified by the contract. As it stands now, there is no cable wiring in The Bronx, Brooklyn, Queens, Staten Island and parts of Manhattan, and as such, viewers in those areas cannot watch Yankee games which are telecast by SportsChannel; that SportsChannel and the Yankees had entered into an agreement on June 13, 1986 to modify the SportsChannel contract to reduce from 100 to 75 the number of games committed to SportsChannel in 1987 and 1988; that in reliance upon the purported modification, the Yankees had entered into an agreement with WPIX pertaining to the broadcast rights for 75 games during the 1987 and 1988 seasons; and that SportsChannel was tortiously interfering with the WPIX contract. The Yankees requested, among other things, a declaration of the rights and obligations of the parties and an order enjoining SportsChannel from interfering with the alleged WPIX contract. They also moved for an order enjoining defendants from interfering with or seeking or attempting to interfere with the performance by the Yankees of their obligation pursuant to a contract with WPIX, Inc., claiming or asserting any rights to telecast more than 75 Yankee baseball games during the 1987 and 1988 baseball seasons, and telecasting any Yankee baseball games during the 1987 and 1988 baseball seasons or claiming and asserting any rights to telecast such games during the 1987 and 1988 baseball seasons.

In opposition to plaintiff's motion for a preliminary injunction, defendants contended that the request to order a reduction of the number of games telecast by SportsChannel from 100 to 75 in 1987, on the basis of a supposed contract modification allegedly entered into during the course of oral negotiations, is without merit.

Special Term granted plaintiff's motion for a preliminary injunction to the extent of enjoining defendants from (a) interfering with or attempting to interfere with the Yankees' performance of their contract with WPIX, Inc.; and (b) asserting, claiming or representing that they possess rights to telecast more than 75 New York Yankees baseball games during the 1987 and 1988 seasons.

It is well settled that in order to obtain the drastic remedy of a preliminary injunction, a party must show a clear right to that relief by demonstrating a likelihood of success on the merits, irreparable injury absent such relief, and that the balance of the equities lies in its favor. The purpose of the granting of the preliminary injunction is to maintain the status quo until the merits are decided. *(Albini v Solork Assoc.,* 37 AD2d 835.)

The Yankees have failed to meet that burden here. With respect to the merits of the Yankees' claim of modification of the SportsChannel contract, it is unlikely that they will succeed on that claim.

The record indicates that the parties were engaged in extensive negotiations concerning the 1987 and 1988 baseball seasons. However, it does not appear that these negotiations ever culminated in a valid modification of the Yankee contract with SportsChannel. SportsChannel had submitted to the Yankees a multifaceted proposal, one element of which provided for a reduction of the number of games SportsChannel would telecast. In a letter dated June 18, 1986, George Steinbrenner III, one of the partners of plaintiff, expressly rejected the proposal on the one hand, but accepted the offer to reduce the number of games SportsChannel would telecast. However, this letter of June 18, 1986 represented nothing more than a counteroffer and, as such, there was no meeting of the minds as to the terms of the modification of the contract.

The contract between the Yankees and SportsChannel expressly provides as follows: "This Agreement may not be modified, amended, altered or supplemented except with the execution and delivery of a written agreement executed by each of the parties hereto. However, any party may waive any condition to the obligations of such party hereunder." On the two prior occasions where the contract was amended, both amendments were formal written agreements signed by both parties and one of them involved, *inter alia,* a reduction in the number of games to be telecast by SportsChannel. *(See also,* General Obligations Law § 15-301, which prohibits oral modification of a contract which contains a provision to the effect that it cannot be changed orally.)

Furthermore, since the alleged modification involved an agreement which could not be performed within one year of the making thereof (here performance spans a two-year period, the 1987 and 1988 baseball seasons), the New York Statute of Frauds prevents enforcement of such an agreement

unless it or a memorandum of it is in writing and subscribed by the party to be charged. (General Obligations Law § 5-701.) There was no such writing in the case at bar.

While the reduction in the number of games may have been an element of the entire proposal that both SportsChannel and the Yankees were willing to agree upon, it does not appear that SportsChannel ever intended to reduce the number of games it had without any financial settlement or other consideration from the Yankees. Since this reduction in the number of games was simply one element of ongoing negotiations, it cannot be concluded that SportsChannel made a "clear and unambiguous promise" which would serve to estop it from denying the validity of the alleged modification. In addition, the Yankees' claim of estoppel also fails since they have not actually demonstrated that their reliance upon the purported modification was reasonable. The past practice of the parties had always been to amend the contract only by executed writings. As such, Steinbrenner's reliance on oral statements or the proposal offered by SportsChannel during the course of ongoing negotiations was unreasonable.

The Yankees' claim of tortious interference by SportsChannel with the Yankees' performance of their purported agreement with WPIX is also without merit. If the Yankees were to make out a claim of tortious interference, it would have to prove (a) the existence of a valid contract between the Yankees and WPIX; (b) SportsChannel's knowledge of that contract; and (c) SportsChannel's interference with the performance of the contract without justification. (See, S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp., 108 AD2d 351, 354.) Once again, the plaintiff has failed to meet that burden. Since the Yankees have been unable to establish that their contract with SportsChannel was validly modified, they cannot establish that they were entitled to enter into the contract with WPIX. In addition, SportsChannel's supposed tortious acts consist in essence only of its refusal to give up valuable contract rights. It cannot be concluded that the failure of SportsChannel to recognize the validity of a purported contract which violates its own contractual rights constitutes interference.

The merits of the Yankees' claim of rescission, based on SportsChannel's inability to perform the original contract since it cannot deliver the audience originally contemplated due to cable wiring problems, cannot be determined on this record. Even assuming that it is ultimately determined that the Yankees are entitled to rescind the contract with Sports-

Channel, they are nonetheless not entitled to the preliminary injunction which was granted here. The injunction which is presently enjoining defendants from interfering in the Yankees' performance of their contract with WPIX does not maintain the status quo between the parties. Instead, it allows the Yankees to perform a contract with WPIX, a contract they have yet to prove they could have validly entered into in view of the existing contract with SportsChannel.

Finally, the Yankees have not demonstrated they would suffer irreparable injury during the pendency of this action absent an injunction. The Yankees' only claim of injury is the fact that they need to obtain subscribers and advertisers several months prior to the 1987 baseball season. The uncertainty as to the number of games that WPIX and SportsChannel will broadcast is a matter of the Yankees' own doing, and it appears that, if successful in the action, the Yankees can be compensated in money damages. Concur—Murphy, P. J., Kupferman, Sullivan, Asch and Ellerin, JJ.