**LION FOODS LTD., Plaintiff,**

v.

**DAARNHOUWER (NEW YORK) INC., Defendant.**

**No. 86 Civ. 2608 (WCC).**

United States District Court, S.D. New York.

Feb. 2, 1987.

Nourse & Bowles, New York City, for plaintiff; Gerald P. Lepp, of counsel.

Munves, Tanenhaus & Storch, P.C., New York City, for defendant; Carol Zerbe Hurford, of counsel.

WILLIAM C. CONNER, District Judge:

Plaintiff, Lion Foods, LTD., ("Lion"), brings this action alleging the non-performance of four contracts for the shipment of a total of 170 metric tons of white pepper, which was to be arranged by the defendant, Daarnhouwer (New York) Inc. ("Daarnhouwer"). The contracts provided that their terms would be governed by the conditions of Daarnhouwer's covering purchase registered with the China National Native and Animal By-Products Import and Export Corporation ("CNNP"). This provision was included to ensure that if there were no shipments from the Chinese supplier to Daarnhouwer, Daarnhouwer's agreements with Lion would be null and void. Defendant Daarnhouwer concedes that no deliveries were made to Lion, but maintains that, under the Chinese terms, it was excused from performance by a domestic shortage of pepper in China.

This action is before the Court on plaintiff Lion's motion for summary judgment pursuant to rule 56, Fed.R.Civ.P., on three grounds: (1) defendant Daarnhouwer did not make any contracts to cover its pepper sales to plaintiff Lion; (2) if such contracts were made, Daarnhouwer cannot establish that a shortage of pepper in China prevented their execution; and (3) Daarnhower did not contract directly with CNNP as was allegedly required by its contract with Lion. Lion contends that since Daarnhouwer did not contract directly with CNNP, Daarnhouwer's defense must fail, since the Chinese terms and conditions, which would have excused Daarnhouwer's failure to deliver, were to govern only if Daarnhouwer contracted directly with the Chinese.

Daarnhouwer has answered these allegations by asserting that (1) it did execute contracts to cover its proposed sale to Lion; (2) it has evidence of a pepper shortage in China; and (3) while it did not contract with the Chinese directly, it did make covering contracts with Triumph Trading Co. ("Triumph"), a reseller in Hong Kong, which contracted directly with the Chinese. Daarnhouwer's contracts with Triumph were governed by Chinese terms and were, according to Daarnhouwer, null and void when CNNP, in a letter to Triumph, reneged.

It is well settled that summary judgment may only be granted where "there is no genuine issue as to any material fact". Fed.R.Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir. 1986). In its affidavits and exhibits submitted to the Court in opposition to this motion, defendant has demonstrated that there are material facts in dispute here which preclude the granting of summary judgment at this time.

Lion's first contention is that Daarnhouwer cannot establish that it contracted to purchase the pepper for shipment to Lion. Its second assertion is that even if such contracts were made, Daarnhouwer would not be able to show that the Chinese failed to perform. Memorandum of Law in Support of Plaintiff's Motion For Summary Judgment at 4. Daarnhouwer has presented the Court with evidence of nine covering contracts between itself and

Triumph which correspond exactly in quantity and shipping dates to the four contracts that Daarnhouwer made with Lion. *Compare* Yan Magh's Affidavit in Opposition to Plaintiff's Motion for Summary Judgment ("Magh Affidavit) Exhibits A through I *with* John E.H. Davies' Affidavit in Support of Plaintiff's Motion for Summary Judgment ("Davies Affidavit") Exhibits A through D. Defendant Daarnhouwer has also submitted to the Court the contract between Triumph and the Chinese which was to cover Lion's purchases of white pepper, and CNNP's letter to Triumph of October 5, 1985 which reported a domestic shortage of pepper and cancelled that contract. Magh Affidavit Exhibits J and K. By offering proof of such covering contracts and of a domestic Chinese shortage of white pepper in its affidavits in opposition to the motion, defendant has clearly raised two issues of fact which preclude the granting of summary judgment at this time.

This case also involves a factual dispute over the precise meaning of the contract's terms. Lion's motion is based, in part, upon the premise that defendant Daarnhouwer cannot deny "that the terms and conditions of the purchase contract from CNNP would govern the Contracts between plaintiff and defendant only to the extent that defendant, in fact, contracted *directly* with CNNP." Plaintiff's 3(g) Statement of Material Facts About Which There is No Genuine Issue ¶ 8 (emphasis supplied). Defendant disputes Lion's interpretation of the agreements. It contends that there exists a question of fact as to "[w]hether, pursuant to the agreements at issue, Daarnhouwer was required to enter into any agreements directly with CNNP" or whether it could contract indirectly with CNNP (in this case through Triumph) and still have the Chinese terms and conditions govern the contract. Defendant's 3(g) Statement of Disputed Material Facts ¶ 5.

Daarnhouwer has presented extrinsic evidence in support of its contention that the contracts between itself and Lion did not require defendant to contract directly with CNNP. Proof has been offered that plaintiff's agent was aware, while bargaining, that Daarnhouwer always obtained white pepper for its customers through a middleman in Hong Kong. George G. Willekes' Affidavit in Opposition to Plaintiff's Motion For Summary Judgment ("Willekes Affidavit") ¶ 12; Magh Affidavit ¶ 10. Daarnhouwer has also come forward with evidence of its intent in agreeing to the terms at issue, more specifically that, at the time at which the contracts were entered into, it understood the language to mean that Chinese terms would govern the contracts. Willekes Affidavit ¶ 22. Moreover, defendant has presented parol evidence that the parties agreed, by telephone, that the contracts would be null and void in the event that the Chinese failed to ship the pepper. Magh Affidavit ¶ 4. Evidence of prior dealings between Daarnhouwer and Lion's agent, when acting for different principals, has also been offered in support of Daarnhouwer's interpretation. These prior contracts contained the same language as is at issue here, and were considered to be governed by the Chinese rule of no delivery, no contract. Magh Affidavit ¶ 8; Willekes Affidavit ¶¶ 23, 24. Finally, Daarnhouwer has provided proof of its contention that in the spice trade, Chinese terms always control the sale of Chinese spices. Citing specific contracts for Chinese spices, defendant has established that a wide variety of language is used to indicate that the Chinese rule will govern. Willekes Affidavit ¶¶ 13–15.

█ It is well established that summary judgment cannot be granted in a contract case where there is a legitimate factual dispute regarding the interpretation of the contract's terms. Judge Kaufman recently relied upon the rule of *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), in reversing a grant of summary judgment:

> In an action on a contract—such as the one before us—summary judgment is perforce improper unless the terms of the agreement are "wholly unambiguous" ... Accordingly, unless the moving party can establish that the contrac-

tual language is not "susceptible of at least two fairly reasonable meanings" ... a material issue exists concerning the parties' intent, and the non-moving party has a right to present extrinsic evidence regarding the meaning of the contested term.

*Wards Company, Inc. v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir. 1985) (citations omitted). Summary judgment has thus been denied where a contract was ambiguous and parol evidence relevant. *Ralli v. Tavern on the Green,* 566 F.Supp. 329 (S.D.N.Y.1983). It was also denied, in a case involving contract interpretation, where the parties' intentions, their prior dealings, and custom and usage in the trade were at issue. *Savarin Corp. v. National Bank of Pakistan,* 290 F.Supp. 285 (S.D.N.Y.1968), *modified on other grounds,* 447 F.2d 727 (2d Cir.1971). In *Home Insurance Company v. Aetna Casualty and Surety Company,* 528 F.2d 1388 (2d Cir.1976), the Court of Appeals for the Second Circuit reversed a grant of summary judgment where the parties were in sharp disagreement over the meaning and intent behind the addition of a clause in an insurance contract. According to that court, the dispute placed in issue the understanding and custom of the insurance industry regarding such contracts. *Home Insurance Company,* 528 F.2d at 1390. Whether the contracts between Daarnhouwer and Lion required Daarnhouwer to contract directly with CNNP is an issue of fact which cannot be resolved without examining the prior dealings of the parties, the parol evidence, the customs of the spice trade, the negotiations between the parties, and any other evidence which may be relevant.

Defendant Daarnhouwer, through its affidavits and exhibits in opposition to the motion, has met its burden of demonstrating that factual questions are present as to (1) whether Daarnhouwer made contracts covering its proposed sale of white pepper to Lion; (2) whether there was a domestic shortage of white pepper in China during the relevant period; and (3) whether the contracting parties intended to make the

incorporation of the Chinese terms conditional upon a direct contractual relationship between Daarnhouwer and the Chinese.

For the reasons outlined above, plaintiff's motion for summary judgment is denied.

SO ORDERED.