ALBEMARLE THEATRE, INC., Appellant, *v.* BAYBERRY REALTY CORPORATION et al., Respondents, et al., Defendants.

First Department, February 28, 1967.

*Milton Pollack* (*Francis E. Koch* and *Barry H. Singer* with him on the brief), for appellant.

*Herman Schmertz* of counsel (*Harry A. Gair* with him on the brief; *Zalkin & Cohen,* attorneys), for respondents.

WITMER, J. The questions presented on this appeal are:

(1) Whether plaintiff, as a party to a contract with several of the defendants, may maintain an action in *tort* for damages

against said defendants because of their conduct in conspiring and acting with third persons in derogation of the rights of the plaintiff under the contract and with intent to destroy plaintiff's interest in the subject matter of the contract?

(2) Does the amended complaint in this action, in which conspiracy to injure plaintiff's property, the subject of the contract between plaintiff and defendants, is charged against said defendants and others and in which it is alleged that defendants have committed torts against the plaintiff and its said property and wherein compensatory and punitive damages are sought, state a cause of action for *breach of contract*?

(3) Does the amended complaint state a cause of action against a particular third party, also made a defendant herein, for *inducing* the alleged *breach of contract* by the contracting defendants?

The action was commenced in May, 1957 and issue was joined on the amended complaint in June, 1957. When the case was about to be reached for trial late in 1965 defendants-respondents successfully moved to dismiss the amended complaint as to them on the ground of '' legal insufficiency ''; and it is from the order granting such motion with leave to replead that this appeal is taken.

Plaintiff instituted the action to recover damages for alleged loss of rents and destruction of the value of its Albemarle Theatre property, which the plaintiff in 1949 had leased to defendant Bramarle for a 13½-year period at a basic rental plus a percentage of the gross receipts from its operation as a theatre. Plaintiff alleges that as a condition of granting such lease to Bramarle, it entered into an agreement at the same time with other defendants, known as the Century Group, of which Bramarle was a part, in which the Century Group agreed to supply to Bramarle first run motion pictures for exhibition in said theatre; that plaintiff's Albemarle Theatre had a high reputation as a first-rate theatre; and that continuing the showing of first run pictures therein would maintain its good rating and its value as a theatre property. It was alleged that to further their interests in other competing theatres and obtain other income, the Century Group defendants, including Bramarle, thereafter entered into agreement with other defendants, known as the RKO Group (the owners of competing theatres, who are not parties to this motion), to run motion pictures of lesser grade than first run in the Albemarle Theatre; that such agreement was part of a conspiracy on the part of all the defendants to increase their income at the expense of the plaintiff's interest in the lease and to the permanent injury and destruction of the

value of said Albemarle Theatre; that as a part and result of said agreement the defendant Andrews, Inc., a refreshment concessionaire company, and the other Century Group defendants have for some years received substantial revenues from refreshment concessions in RKO Theatres; and plaintiff's rents have been greatly reduced and the reputation of the Albemarle Theatre has been damaged so seriously that at the end of the lease period it will no longer have utility as a theatre, and plaintiff has been greatly damage thereby. Plaintiff alleges that ''The aforesaid acts, torts and conspiracy of the defendants were done with the wilful intention to destroy and impair plaintiff's property rights in the Albemarle Theatre '', and asks for punitive damages in the sum of $2,000,000 as well as for compensatory damages.

It is familiar law that allegations of a civil conspiracy, without more, do not constitute a cause of action (*Cuker Ind.* v. *Crow Constr. Co.,* 6 A D 2d 415, 417; *Miller* v. *Spitzer,* 224 App. Div. 39); and that likewise allegations of conspiracy by some parties to a contract to break it and their consequent failure to carry out the contract, in pursuance of the conspiracy, without more do not state a cause of action in tort against them in favor of another party to the contract (*Bereswill* v. *Yablon,* 6 N Y 2d 301; *Miller* v. *Vanderlip,* 285 N. Y. 116, 125; *Warner Bros. Pictures* v. *Simon,* 21 A D 2d 863, affd. 15 N Y 2d 836; *Friedman* v. *Roseth Corp.,* 270 App. Div. 988, affd. 297 N. Y. 495; *Rosenbaum* v. *Branster Realty Corp.,* 276 App. Div. 167). In such cases the remedy against the conspiring parties to the contract is an action for breach of contract.

The amended complaint, however, contains allegations far beyond a mere assertion of conspiracy by the defendants not to carry out the contract. It is alleged that the defendant contracting parties, in order to improve the operating position of other theatres owned by them and run in competition to plaintiff's Albemarle Theatre, and to secure substantial additional income from refreshment concession operations in other theatres, not only failed to operate the Albemarle Theatre responsibly pursuant to the contract, but affirmatively, intentionally and wilfully set out in conjunction with other defendants to destroy the value and utility of the Albemarle Theatre henceforth as a theatre. Such allegations state a valid cause of action in tort against the contracting parties.

Although the principle of liability for tort by one party to a contract to another party thereto is more frequently applied in cases of public carriers, innkeepers and confidential relationships, it is by no means limited thereto. (*Cortes* v. *Baltimore*

*Insular Line,* 287 U. S. 367, 372; *Greco* v. *Kresge Co.,* 277 N. Y. 26, 30; *Boyce* v. *Greeley Sq. Hotel Co.,* 228 N. Y. 106, 110–111; *Gillespie* v. *Brooklyn Hgts. R.R. Co.,* 178 N. Y. 347, 352; *Rich* v. *New York Cent. & Hudson Riv. R.R. Co.,* 87 N. Y. 382, 393 *et seq.*; *Trans Caribbean Airways* v. *Lockheed Aircraft Serv.-Int.,* 14 A D 2d 749; Prosser, Torts, [3d ed.], pp. 634–643; 86 C.J.S., Torts, §§ 2 and 3; and, see, Thornton, The Elastic Concept of Tort and Contract as Applied by the Courts of New York, 1948, 14 Brooklyn L. Rev. 196; and cf. *Stella Flour & Feed Corp.* v. *National City Bank of N. Y.,* 285 App. Div. 182, affd. 308 N. Y. 1023.)

The difference between actions in tort and for breach of contract is expressed by Prosser (*supra,* p. 634) as follows: '' The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties　＊　＊　＊　Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. Even as to these individuals, the damages recoverable for a breach of the contract duty are limited to those reasonably within the contemplation of the defendant when the contract was made, while in a tort action a much broader measure of damages is applied.'' As to when recovery may be had in tort or contract or both, Prosser, Torts (supra, pp. 637–638) says: '' Where the defendant has done something more than remain inactive, and is to be charged with a ' misfeasance ' the possibility of recovery in tort is considerably increased　＊　＊　＊　Here again the duty is an incident of the relation rather than the contract ''. In the *Rich* case (*supra,* p. 395) the leading case on the subject, the court said: '' ＊　＊　＊　unless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be a breach of the contract, there is no tort, since there is no duty to be violated. And the illustration given is the common case of a contract of affreightment, where, beyond the contract obligation to transport and deliver safely, there is a duty, born of the relation established to do the same thing. In such a case, and in the kindred cases of principal and agent, of lawyer and client, of consignor and factor, the contract establishes a legal relation of trust and confidence; so that upon a breach of the contract there is not merely a broken

promise, but, outside of and beyond that, there is trust betrayed and confidence abused; there is constructive fraud, or a negligence that operates as such, and it is that fraud and that negligence which, at bottom, makes the breach of contract actionable as a tort.'' At page 397 thereof the court added: '' The company willfully and purposely refused to perform its contract.'' And the court continued (pp. 397–398): '' We are thus able to see what the tort pleaded was. It was not a constructive fraud, drawn from the violation of a duty imposed by law out of some specific relation of trust and confidence, but an actual and affirmative fraud; an alleged scheme to accomplish a lawful purpose by unlawful means. There was here, on the theory of the complaint, something more than a mere breach of contract. That breach was not the tort; it was only one of the elements which constituted it. Beyond that and outside of that there was said to have existed a fraudulent scheme and device  *  *  *  In other words, the necessary theory of the complaint is that a breach of contract may be so intended and planned; so purposely fitted to time, and circumstances and conditions; so inwoven into a scheme of oppression and fraud; so made to set in motion innocent causes which otherwise would not operate, as to cease to be a mere breach of contract, and become, in its association with the attendant circumstances, a tortious and wrongful act or omission.''

Recognizing the principle quoted from Prosser, Torts (*supra*) that something more than mere inaction on the part of a contracting party must appear, the court in the *Rich* case (*supra,* pp. 398–399) said: '' It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty may arise, not merely out of certain relations of trust and confidence, inherent in the nature of the contract itself,  *  *·  *  but may spring from extraneous circumstances, not constituting elements of the contract as such although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud  *  *  .  *  Whatever its origin, such legal duty is uniformly recognized, and has been constantly applied as the foundation of actions for wrongs; and it rests upon and grows out of the relations which men bear to each other in the framework of organized society. It is then doubtless true, that a mere contract obligation may establish no relation out of which a separate or specific legal duty arises, and yet extraneous circumstances and conditions, in connection with it, may establish such a relation

as to make its performance a legal duty, and its omission a wrong to be redressed."

The plaintiff at bar has a stronger case for an action in tort than that presented in the *Rich* case (*supra*). In the latter case the defendant had failed completely to perform its contract as part of a plan which it otherwise actively advanced to decrease the value of plaintiff's property. In the case at bar the Century Group defendants, it is alleged, wilfully and intentionally improperly performed their contract to operate the Albemarle Theatre, and did so, in connection with their other acts, in a manner calculated drastically to decrease its competitive position and value, to their own substantial benefit. This constituted not only a breach of their contract with the plaintiff, but a violation of their legal common-law duty extraneous to the contract not to act wilfully to destroy the property of another, including the plaintiff.

We hold, therefore, that the amended complaint states a valid cause of action in tort.

Special Term held that since the plaintiff expressly attempted to plead a cause of action in tort, the amended complaint should not be sustained as alleging a cause of action for breach of contract. Two contracts between the plaintiff and the Century Group defendants are alleged in the amended complaint, and also the defendants' duty thereunder, their failure to perform, and damages to the plaintiff. Because of the intermixture of allegations of conspiracy and wrongdoing and the express reliance on the tort theory of action and the request for punitive damages, without separately stating and numbering the causes of action, it must be said that the amended complaint is inartistically drawn. Nevertheless, we find that it does state a valid cause of action for breach of contract.

It is provided in CPLR 3026 that " Pleadings shall be liberally construed." Under this legislative mandate it is said that " Pleadings should not be dismissed or ordered amended unless the allegations therein are not sufficiently particular to apprise the court and parties of the subject matter of the controversy." (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3013.03.) That was the rule before the CPLR (*Diemer* v. *Diemer,* 8 N Y 2d 206, 211–212; *Clevenger* v. *Baker Voorhis & Co.,* 8 N Y 2d 187, 188), and it is still the law and practice (*Foley* v. *D'Agostino,* 21 A D 2d 60, 64-65).

Had the defendants felt that they could not properly answer without having the causes of action separately stated and numbered or otherwise clarified, they could have moved for such relief (and, see CPLR 3024; 3 Weinstein-Korn-Miller, N. Y. Civ.

Prac., par. 3024.01); but apparently they did not need such relief, and interposed their answers, thus waiving the right to so move. Eight years later, after years of pre-trial preparations and when the case is about to be reached for trial, the plaintiff should not be required to amend, which would result in much further delay of the trial.

Of course, a motion to dismiss for failure to state a cause of action may be made at any time. Defendants contend that the amended complaint does not state a cause of action in contract for lack of an allegation that the plaintiff has performed all conditions of the contract on its part to be performed. Although the plaintiff did not make such allegation *verbatim*, it did plead the facts of substantial performance on its part, and such was sufficient under former rule 92 of the Rules of Civil Practice in effect when this pleading was served. Of course, under the CPLR (3015, subd. [a]) plaintiff has no duty to plead performance of conditions precedent — they are matters of defense.

With respect to the cause of action as against the moving defendant Andrews, Inc., the refreshment concessionaire who was not a party to the contract, we also find that it is valid. It is alleged that the corporation was and is controlled by the Century Group, and their acts were its acts. It is thus alleged that defendant Andrews, Inc. participated in wrongful acts designed to induce and did induce parties to plaintiff's contract to break their agreement, to the plaintiff's damage. If such allegations are established upon the trial, defendant Andrews, Inc. may be held liable to the plaintiff for the damage caused (*Hornstein* v. *Podwitz,* 254 N. Y. 443; *Posner Co.* v. *Jaskson,* 223 N. Y. 325, 332; Restatement, Torts, § 766, subd. [a]; §§ 767, 768, 771; and, see *Schulman* v. *Royal Ind. Bank,* 280 App. Div. 401, 403). The complaint is, therefore, sustained as against defendant Andrews, Inc.

The order appealed from, entered February 17, 1966, granting the motion of defendants to dismiss the amended complaint with leave to replead, should be, therefore, in all respects reversed on the law, and the motion should be denied, with costs and disbursements to the plaintiff-appellant.

BOTEIN, P. J., STEVENS and RABIN, JJ., concur.

Order entered on February 17, 1966, unanimously reversed, on the law, with $50 costs and disbursements to the appellant, and defendants' motion denied.