HARVEY CHARLES, Respondent, v ONONDAGA COMMUNITY COL-
LEGE et al., Appellants.

Fourth Department, July 13, 1979

## APPEARANCES OF COUNSEL

*Ralph I. Greenhouse*, County Attorney (*Michael Klein* of counsel), for appellants.

*John E. Shaffer* for respondent.

## OPINION OF THE COURT

HANCOCK, JR., J.

Has plaintiff stated a cause of action in tort in his action against his employer for wrongful discharge? That is the question in defendants' appeal from a denial of their motion pursuant to CPLR 3211 (subd [a], par 7) to dismiss the last four numbered causes of action in plaintiff's complaint including a claim for punitive damages.

Plaintiff was vice-president and dean of Onondaga Community College until August 31, 1973 when his services under a five-year written contract were terminated by a letter sent to his attorney. His first cause of action is for breach of contract. Stripped of its extraneous assertions,[1] the first cause of action alleges that defendants, in terminating plaintiff's contract, were bound by certain of their governing rules and regulations, personnel policies and board resolutions the effect of which was to give to him, during the term of his contract, all of the rights (as set forth in the collective bargaining agreement between the college and the American Federation of Teachers, Local 1845) accorded to a tenured faculty member in the event of the nonrenewal of an employment contract or a dismissal. Plaintiff alleges that in discharging him without granting him a hearing or placing charges against him and without giving him notice other than the letter of August 31, 1973, defendants acted unlawfully. He seeks damages for breach of contract and a judgment of specific performance reinstating him to his position and enjoining the defendants from interfering with him in the performance of his duties.

The second, third, fourth, and fifth numbered causes of action seek tort damages for various physical and mental

---

1. For example, plaintiff's complaint refers to his appointment (apparently at an earlier time) as a professor of psychology and to claimed tenure under such appointment. There is no request for reinstatement to such position and the appointment as professor of psychology does not appear to be a basis for plaintiff's claim for damages. No mention was made of the appointment in the briefs or on the argument. We, therefore, deem any claim based thereon to have been abandoned. Such claim, even if asserted, would have no effect on our decision herein.

injuries, for damage to plaintiff's personal and professional reputation, for impairment of his professional career as an educator and administrator, and for deprivation of his livelihood. There is also a claim for punitive damages. Each of the last four numbered causes of action restates the allegations in the first cause of action pertaining to the breach of contract. In addition, plaintiff asserts that under subdivision 2 of section 6306 of the Education Law and 8 NYCRR 604.2 (b) (1) (formerly 605.2 [b] [1]) the power to terminate his contract "was vested in the President of the College and not the Board of Trustees" and that the defendants in discharging him "usurped authority conferred upon the President of the College." Finally, it is alleged that "as a result of the illegal and *ultra vires* usurpation of statutory authority of the defendants herein in interfering with and prohibiting and denying plaintiff the right to perform his obligations under the terms of the said employment contract, the defendants have maliciously, knowingly, wantonly, and willfully injured plaintiff physically and mentally".

Defendants contend that the complaint contains no allegation of a breach of duty owed to plaintiff other than what arises from the contract itself and that, therefore, the last four causes of action should have been dismissed. We agree. The general rule is that "a breach of contract does not give rise to a tort action * * * in the absence of special additional allegations of wrongdoing" *(Wegman v Dairylea Coop.,* 50 AD2d 108, 112; see *North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171; *Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382; *Chase v United Hosp.,* 60 AD2d 558; *Effective Communications West v Board of Coop. Educ. Servs.,* 57 AD2d 485; *Egan Real Estate v McGraw,* 40 AD2d 299; *Reale v International Business Machs. Corp.,* 34 AD2d 936, affd 28 NY2d 912; *Albemarle Theatre v Bayberry Realty Corp.,* 27 AD2d 172; Prosser, Law of Torts [4th ed], pp 613-618; 86 CJS, Torts, §§ 2, 3).

A duty extraneous to the contract often exists where the contract results in or accompanies some relation between the parties out of which arises a duty of affirmative care as in cases involving bailor and bailee, public carrier and passenger, innkeeper and guest, lawyer and client, or principal and agent (see *Albemarle Theatre v Bayberry Realty Corp., supra;* Prosser, Law of Torts [4th ed], pp 613-618). Although in the case at bar there was concededly no relationship between plaintiff

and defendants other than that of parties to the contract of employment, the absence of such relationship is not necessarily fatal to plaintiff's claim. As stated in *Rich v New York Cent. & Hudson Riv. R. R. Co. (supra,* p 390): "When such duty grows out of relations of trust and confidence, as that of the agent to his principal or the lawyer to his client, the ground of the duty is apparent, and the tort is, in general, easily separable from the mere breach of contract. But where no such relation flows from the constituted contract, and still, a breach of its obligation is made the essential and principal means, in combination with other and perhaps innocent acts and conditions, of inflicting another and different injury, and accomplishing another and different purpose, the question whether such invasion of a right is actionable as a breach of contract only, or also as a tort, leads to a somewhat difficult search for a distinguishing test" and further (pp 397-398): "It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty may arise, not merely out of certain relations of trust and confidence, inherent in the nature of the contract itself * * * but may spring from extraneous circumstances, not constituting elements of the contract as such although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud." (See *Albemarle Theatre v Bayberry Realty, supra.)*

In *Rich,* in exchange for plaintiff's surrender of riparian rights valuable to defendant, defendant agreed to restore its railroad depot to a location which would enhance the value of certain of plaintiff's property on Main Street. In defiance of the contract, defendant refused to open the depot and thereby greatly decreased the value of plaintiff's property and caused him to lose it in foreclosure. The court held that defendant's refusal to perform the contract was part of a fraudulent scheme to decrease the value of plaintiff's property and force it into foreclosure for the purpose of removing plaintiff as an obstacle to defendant's plans to close Main Street.

Similarly, in *Albemarle Theatre v Bayberry Realty Corp.* (27 AD2d 172, 177, *supra)* the court held that a cause of action in tort was pleaded which alleged that the defendants intentionally breached their contract to supply first run moving pictures to plaintiff's theatre as part of a conspiracy with

other defendants "and did so, in connection with their other acts, in a manner calculated drastically to decrease [plaintiff's] competitive position and value, to their own substantial benefit." Such conduct constituted "not only a breach of their contract with the plaintiff, but a violation of their legal common-law duty extraneous to the contract not to act willfully to destroy the property of another, including the plaintiff" *(Albemarle Theatre v Bayberry Realty Corp., supra,* p 177; see *North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, *supra).*

Here it is not claimed that defendants discharged plaintiff as part of larger fraudulent or malicious design to injure plaintiff or benefit defendants or in furtherance of some purpose which transcended the breach of the contract itself. No wrongful conduct except breach of the contract is asserted. No unlawful purpose except to dismiss the plaintiff is alleged.[2] The allegations that in discharging him from his position defendants "have maliciously, knowingly, wantonly and willfully" caused him an injury and that defendants have acted arbitrarily and illegally in "prohibit[ing] and terminat[ing] further performance of plaintiff's duties" do not convert the complaint from one in contract to one in tort. "Whatever, or however numerous or formidable, may be the allegations of conspiracy, of malice, of oppression, of vindictive purpose, they are of no avail; they merely heap up epithets, unless the purpose intended, or the means by which it was to be accomplished, are shown to be unlawful" *(Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 394, *supra;* see *John C. Supermarket, Inc. v New York Prop. Ins. Underwriting Assn.,* 60 AD2d 807; *Reale v International Business Machs. Corp.,* 34 AD2d 936, affd 28 NY2d 912, *supra;* see *Egan Real Estate v McGraw,* 40 AD2d 299, 302, *supra,* an action by a real estate broker to recover the amount of a commission, in which it was held that plaintiff's allegations that defendant "avoided and refused to deal with * * * plaintiff and otherwise prevented plaintiff 'from being fully involved'" in the transaction were "encompassed within [the] action for breach of contract" and stated no facts extraneous thereto).

---

2. As noted in Prosser (Law of Torts [4th ed], p 618), "the affirmative act of discharging an employee is uniformly considered to be no more than nonperformance of the agreement to continue employment * * *. The question appears to be * * * whether the defendant's performance, as distinct from his promise or his preparation, has gone so far that it has begun to affect the interests of the plaintiff beyond the expected benefits of the contract itself".

Plaintiff would distinguish *Wegman v Dairylea Coop.* (50 AD2d 108, *supra)* by finding a noncontractual duty owed to plaintiff in defendants' by-laws, policies and resolutions, which assertedly gave him the rights of a tenured faculty member under the collective bargaining agreement.[3] But it is precisely defendants' failure to terminate the contract in accordance with such "by-laws, policies and resolutions" and with the collective bargaining agreement which underlies plaintiff's claim of breach of contract.

Similarly the claim that defendants terminated his contract in contravention of subdivision 2 of section 6306 of the Education Law and 8 NYCRR 604.2 (b) (1) (formerly 605.2 [b] [1]) is but another ground for asserting that his discharge was unlawful.[4] Aside from their claimed effect on plaintiff's rights to continued employment under the contract neither the defendants' own rules and by-laws nor the provisions of the Education Law nor the State rules and regulations give rise to an independent duty owed from defendants to plaintiff. Accordingly, the last four causes of action should have been dismissed.

Inasmuch as the only valid cause of action pleaded is for breach of contract, the motion to dismiss any claim for punitive damages should also have been granted (see *John C. Supermarket, Inc. v New York Prop. Ins. Underwriting Assn., supra; Turski v Chiesa,* 58 AD2d 828; *Effective Communications West v Board of Coop. Educ. Servs.,* 57 AD2d 485, *supra;*

---

3. The complaint refers to the board resolution dated December 14, 1970 requiring that the board of trustees, in terminating the services of an administrator, "give to such person notice of such action which is equal to that given to a faculty member in terms of time," and to the personnel policies approved July 10, 1972, which provided: "Termination of contract for members of the administration shall be consonant with such action as members of the faculty. (Board Resolution, December 14, 1970.)" By virtue of the foregoing, plaintiff claims to have the same rights as tenured faculty members under the two contracts between Onondaga Community College and the American Federation of Teachers for the periods of 1971-1972 and 1972-1974. These contracts in identical terms contain deadline dates for nonrenewal of contracts based on the number of years the faculty member has been employed and establish grievance procedures for termination of tenure.

4. There is no question that the board of trustees has the power to delegate the authority to the president of the college to hire, promote and dismiss employees (Education Law, § 6306, subd 2; 8 NYCRR 604.2 [b] [1], formerly 8 NYCRR 605.2 [b] [1]; *Carroll v Onondaga Community Coll.,* 52 AD2d 1063). It is doubtful, however, that the board of trustees by such delegation could have surrendered its ultimate responsibility for personnel appointments and policies (see Education Law, § 6306, subd 2; 8 NYCRR 604.2, 604.2 [a], formerly 8 NYCRR 605.2, 605.2 [a]).

*Wegman v Dairylea Coop., supra; Trans-State Hay & Feed Corp. v Faberge, Inc.,* 42 AD2d 535, affd 35 NY2d 660).

The order should be reversed and the motion granted.

CARDAMONE, J. P., SCHNEPP, DOERR and WITMER, JJ., concur.

Order unanimously reversed, with costs, and motion granted.