GLM CORPORATION, Plaintiff,

v.

Steven KLEIN, Richard Lasky, Jeffrey Fishman and Myles Horn, Defendants.

Steven KLEIN, Counterclaim Plaintiff,

v.

GLM CORPORATION,
Counterclaim Defendant,

and

Michael L. Gordon, Herbert M. Luksch, William Dietch, GLM Investors, Inc., GLM Associates, Inc., GLM Equities, Inc., GLM Partners and GLM Capital Corporation, Additional Counterclaim Defendants.

No. 86 CIV. 4399 (GLG).

United States District Court,
S.D. New York.

July 14, 1987.

Golenbock and Barell (Michael C. Silberberg, Charles S. Joseph, New York City, of counsel), for plaintiff, counterclaim defendant and additional counterclaim defendant.

Olwine, Connelly, Chase, O'Donnell & Weyher (Victor A. Machcinski, Jr., New York City, of counsel), for defendant and counterclaim plaintiff Steven Klein.

Meyers Tersigni Lurie Feldman & Gray (Anthony L. Tersigni, New York City, of counsel), for defendants Richard Lasky and Jeffrey Fishman.

Mandel & Resnik, P.C. (Richard M. Resnik, New York City, of counsel), for defendant Myles Horn.

GOETTEL, District Judge.

The plaintiff, GLM Corporation ("GLM"), is a real estate development corporation whose principal place of business is in Washington, D.C. GLM brings this action against its former representatives,[1] defendants Klein, Fishman, and Lasky (the "Klein defendants"), and against Horn, a rival developer. Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants move to dismiss all counts of the Second Amended Complaint ("complaint") except Counts Two and Three, which are claims for breach of fiduciary duty against the Klein defendants. With respect to the claims against them for fraud, the Klein defendants also move to dismiss pursuant to Fed.R.Civ.P.9(b) for failure to allege fraud with sufficient particularity.

BACKGROUND

The material facts, as alleged by the plaintiff, are as follows. In 1985, GLM opened a New York office in order to expand its real estate development capabilities in the New York market. Klein was retained by GLM as "Vice President—New York Development" and held that position from September 1985 until May 2, 1986. Based on Klein's personal recommendations, GLM also engaged defendants Fishman and Lasky as "Acquisitions Officers." Fishman and Lasky worked for GLM in New York from, respectively, August 1985 and April 1985, until May 27, 1986.

The Klein defendants were responsible for the identification and consummation of real estate investments on behalf of GLM. To support their efforts, GLM gave the defendants access to its contacts with New York real estate brokers, investors, and financing institutions. In addition, the defendants were given access to GLM's proprietary software system, which was developed by GLM to analyze complex real estate transactions. Together with Horn, the Klein defendants allegedly used these resources, and used information which they obtained from or on behalf of GLM, to locate and pursue real estate opportunities for their own benefit, to GLM's detriment.

The Klein defendants purportedly concealed this activity from GLM by, among other means, submitting to GLM falsified activity reports. These reports, which were supposed to reflect all opportunities which they had identified or were pursuing,

1. The parties differ as to the existence and scope of the employment relationship between GLM and the defendants Klein, Fishman, and Lasky.

either did not state the projects which they were pursuing for their own benefit, or misrepresented the economic attractiveness of such projects. In addition, the Klein defendants submitted falsified time sheets. These reports concealed the efforts which defendants were devoting to their own investment activities by attributing the time spent on such efforts to "general acquisitions" or "general administration." Finally, the Klein defendants mailed falsified expense reports to GLM, and sought reimbursement for expenses incurred while pursuing real estate opportunities for their own benefit.

Among others, the defendants allegedly concealed or downplayed the following opportunities:

1. Dara Gardens. At the time GLM was considering the purchase of this Queens, New York, apartment complex, Horn offered Klein a 50 percent profit share if Horn acquired it instead of GLM. To make this possible, Klein supplied Horn with information on the negotiations between GLM and the seller, so that Horn was able to outbid GLM. Once Horn had secured the opportunity, the Klein defendants used GLM's computer software to create financial projections, in order to assist Horn in attracting investors for the purchase.

2. Central Avenue. Although aware of the opportunity to buy this Cedarhurst, New York, apartment building, the Klein defendants failed to disclose it to GLM, and concealed their own participation as purchasers. To conceal their participation, Horn's name was used as nominee for all of the defendants, documents concerning the transaction were mailed to Fishman's residence, and cashier's and third-party checks were used. The defendants subsequently sold the building at a profit.

3. Midlands Mall. Because of the Klein defendants' positions with GLM, the defendants learned of the opportunity to purchase this Iowa shopping mall. By falsely representing to GLM that the property had been sold to other individuals, the Klein defendants were able to divert the opportunity to themselves, and, with a $100,000 loan from Horn, sought to invest in the property.[2]

On the basis of these allegations, GLM charges the Klein defendants with fraud and breach of fiduciary duty. GLM charges Horn with intentional interference with its existing contractual relationships with the Klein defendants, and with intentional interference with its prospective contractual relationship with Dara Gardens Associates, the seller of the Dara Gardens property. In addition, GLM charges all of the defendants with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 to 1968 (1982 & Supp. III 1985).

DISCUSSION

I. Count One

■ This count charges the Klein defendants with fraud. The Klein defendants argue that this case involves nothing more than a breach of contract or other duty, and that the allegations in the complaint cannot be transformed into common law fraud. We disagree.

Although a breach of contract, without more, does not give rise to a tort action under New York law, special additional allegations of wrongdoing will support an action for fraud. *Compare Charles v. Onondaga Community College*, 69 A.D.2d 144, 418 N.Y.S. 718, 720, (4th Dep't), *appeal dismissed*, 48 N.Y.2d 650, 421 N.Y.S.2d 200, 396 N.E.2d 482 (1979) (because the complaint alleged no unlawful purpose other than the breach itself, it stated only a contract action, and not one in tort); *and Albemarle Theatre v. Bayberry Realty*, 27 A.D.2d 172, 277 N.Y.S.2d 505 (1st Dep't 1967) (allegations that breach of contract was calculated to drastically diminish plaintiff's competitive position, to the substantial benefit of the defendants, stated an action in tort). Thus if a breach of contract is also a breach of a legal duty independent of the contract, there is extra-contractual

---

**2.** The complaint does not allege that the defendants in fact acquired any interest in, or profits from, the Midlands Mall project, but only that the Klein defendants utilized the $100,000 supplied by Horn to *attempt* to purchase the property.

wrongdoing, and a fraud action may lie. *Albemarle Theatre, Inc., supra; Rich v. The New York Central & Hudson R.R. Co.,* 87 N.Y. 382, 394 (1882). This result obtains even if such extracontractual duty is born of the contract itself. *Rich, supra.*

If a contract establishes a relationship of trust and confidence between the parties, such as that between agent and principal, then a fiduciary duty arises from the contract which is independent of the contractual obligation. And a breach of contract which also constitutes a breach of that fiduciary obligation is not "merely a broken promise, but, outside of and beyond that, there is trust betrayed and confidence abused; there is constructive fraud." *Rich, supra,* 87 N.Y. at 394. Consequently, an action for fraud will lie, notwithstanding that the breached fiduciary duty arose from the contract establishing the fiduciary relationship.

Although the exact employment status of the Klein defendants is unclear, their relationship with GLM was at the very least akin to that between principal and agent. And it is clear that a fiduciary relationship between them and GLM arose from their employment agreement; inherent in their agreement to scout and develop real estate opportunities for GLM was an obligation not to use their position to benefit GLM's competitors and themselves to GLM's detriment. Because the complaint alleges that the defendants intentionally breached their contract in a manner calculated to significantly decrease GLM's competitive position, to their own and Horn's substantial benefit, the complaint alleges an intentional breach of this extra-contractual fiduciary duty. Therefore the complaint alleges more than a simple breach of contract, and an action for fraud may lie.

█ Next, the defendants argue that even if GLM could state a cause of action for fraud, it has not done so because it has failed to allege the requisite elements of such an action.[3] Among other elements,

the defendants' claim that GLM has not alleged reliance, because "GLM cannot be said to have 'relied' ... on a nondisclosure of the alleged breach of contract." However, the alleged fraudulent omissions concern not only the defendants' agreements and relationships with GLM's competitors, *i.e.,* their breach, but the business opportunities themselves. Thus Count I states a fraud claim not only for the defendants' failure to disclose their breach, but for the defendants' breach itself. And reliance as to both frauds is indicated by GLM's continued employment of the Klein defendants.

However, the defendants argue that such reliance is not causally related to GLM's allegations of injury by lost business opportunities. We disagree. But for GLM's continued employment of the defendants, they would not have been in a position to use GLM's contacts, software, or other resources to divert real estate opportunities away from GLM, nor to convince GLM not to pursue opportunities which the defendants knew to be potentially profitable.

The defendants' next argument, that GLM has not pled causation because any claim of injury to it would be speculative, is no more persuasive. We acknowledge that it may be difficult to prove that GLM would have secured the opportunities in question, and difficult to prove the amount by which GLM would have profited from them. However, construing the complaint in the light most favorable to the plaintiff, *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), we cannot say that any claim of injury to GLM would certainly be speculative.

Finally, the defendants claim that GLM cannot base a fraud claim on the nondisclosure of their breach, because the complaint fails to allege that they had any duty to disclose it. We disagree. These defendants occupied positions of trust and power,

---

3. In order to state a cause of action for fraud and deceit under New York law, the complaint must allege a misrepresentation of a fact known to be untrue by the party making it, and that such misrepresentation was made with the intent to deceive and for the purpose of inducing the other party to act upon it, causing injury. *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 250 N.E.2d 214, 302 N.Y.S.2d 799 (1969).

and their acts in breach of their fiduciary and/or contractual duties allegedly foreclosed GLM from valuable properties. In light of these facts, "the employment relationship, by itself, [obliged defendants] not to conceal, and in fact to reveal, information ... material to the conduct of [GLM's] business," *United States v. Barta*, 635 F.2d 999, 1007 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981), including their breach.

■ The defendants' last attack on Count I is the argument that it does not satisfy the pleading requirements of Fed.R. Civ.P. 9(b). Again, we disagree. The complaint specifies the alleged misstatements and omissions, and indicates in what way these were material to the plaintiff. As to the alleged misstatements, for example, the complaint specifies the allegedly untrue statements which the defendants made on their weekly time reports, and alleges that in reliance thereon, the plaintiff continued to employ the defendants, and paid them for time spent not on GLM business but in fact on the business of GLM's competitors.

As to the alleged omissions, the complaint specifies several real estate opportunities which the defendants allegedly knew of but omitted to disclose or concealed from the plaintiffs. In addition, the complaint specifies the defendants' part in diverting these opportunities away from GLM. That these omissions and concealments were material to the plaintiffs is evident from the fact that the opportunities were allegedly potentially profitable, at least enough so for the defendants to pursue for themselves.

The circumstances constituting the alleged fraud are thus stated with sufficient particularity, and the complaint satisfies the requirements of Rule 9(b).

## II. Count Four

■ In Count Four, the complaint alleges that defendant Horn intentionally interfered with GLM's contractual relationship with the Klein defendants. In order to state a claim for tortious interference with contract under New York law, "the complaint must allege: (1) the existence of a valid contract, of which defendant has knowledge; the defendant's intentional procuring of a breach of that contract; and damages." *Demalco Ltd., v. Feltner*, 588 F.Supp. 1277, 1280 (S.D.N.Y.1984) (citing *Bryce v. Wilde*, 39 A.D.2d 291, 333 N.Y. S.2d 614 (3d Dep't), *aff'd*, 31 N.Y.2d 882, 292 N.E.2d 320, 340 N.Y.S.2d 185 (1972)). There is authority for the proposition that the plaintiff must also show that but for the unlawful actions of defendant the contract would have been performed. *Id.* The plaintiff can satisfy this element by showing that it had more than a reasonable expectation that the contract would be performed.

Horn claims that Count Four is deficient because it does not allege that but for Horn's actions, the Klein defendants would not have breached their contract with GLM. Horn's argument is not persuasive. Although the complaint does not specifically allege this last element, the complaint alleges facts which substantively supply this element. As discussed above, the contractual breaches of which GLM complains indicate breaches of fiduciary duty. Because GLM was entitled, as a matter of law, to the performance of the Klein defendants' fiduciary duties, GLM had more than a reasonable expectation that the contract would not be breached as alleged.

We have considered Horn's other arguments on the sufficiency of this count, and find them meritless.

## III. Count Five

In Count Five, the complaint charges the defendant Horn with intentional interference with GLM's prospective contractual relationship with Dara Gardens Associates, the seller of the Dara Gardens property. Horn argues that the complaint does not state a cause of action for such interference for two reasons. First, he argues that the complaint does not plead that GLM would have consummated the Dara Gardens contract "but for" his alleged interference. Second, Horn argues that the complaint does not sufficiently plead that his alleged interference was accomplished by the use of improper or wrongful means.

288

Of these two arguments, only the first has merit.

GLM's failure to plead that it would have consummated the Dara Gardens agreement but for Horn's interference is fatal to this claim against Horn. *See Special Event Entertainment v. Rockefeller Center*, 458 F.Supp. 72, 78 (S.D.N.Y.1978); *Union Car Advertising Co. v. Collier*, 263 N.Y. 386, 189 N.E. 463 (1934) ("There must be some certainty that the plaintiff would have gotten the contract but for the fraud.").

This conclusion is not altered by the reasoning of *Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838 (S.D.N.Y.1982), which is cited by GLM. In that case, Judge Sand sustained an interference claim notwithstanding a meager pleading which alleged only that the plaintiff "anticipated" prospective business relations. *Crimpers* is distinguishable because in that case, Judge Sand found that the alleged facts could, if proved, support a showing that the contracts would have been entered into. There are no such facts alleged here. In the case at bar, all we have is the plaintiff's allegation that it had reached "an agreement in principle" with Dara Gardens Associates. But the durability of this agreement, and its likelihood of consummation, are belied by GLM's allegation that nothing stronger than a higher bid induced Dara Gardens Associates to abandon its alleged commitment to GLM.

The absence of any allegation that the contract would have been performed but for Horn's alleged acts, coupled with the fact that the pleadings themselves indicate the opposite conclusion, require us to dismiss Count Five of the complaint. *See Special Event Entertainment, supra,* 458 F.Supp. at 78.

## IV. Counts Six and Seven

■ In Count Six, GLM charges the defendants with violating Sections 1962(a) and (c) of RICO. Section 1962(a) makes it unlawful to use income derived from a pattern of racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce. Section 1962(c) makes it unlawful to conduct or participate in the conduct of such an enterprise through a pattern of racketeering activity.

In Count Seven, GLM charges the defendants with violating section 1962(d) of RICO, which prohibits conspiring to violate section 1962(a), (b), or (c). Because the defendants' arguments in support of their motion to dismiss Counts Six and Seven are essentially the same, we will consider them together.

### a. Racketeering activity

The predicate acts of racketeering activity pleaded by GLM are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. The defendants' first challenge to GLM's RICO claims is to argue that GLM has not sufficiently alleged these predicate acts. The defendants claim that neither the alleged breaches of fiduciary duty, nor the nondisclosure of those breaches support a charge of mail or wire fraud. The defendants base this claim on much the same reasons advanced in their argument that the complaint does not state a claim for fraud, but only for breach of fiduciary duty. For the reasons discussed above in Point I, *supra,* we reject their argument.

### b. The pattern requirement

The defendants argue that GLM has not stated a RICO claim because it has not alleged the requisite "pattern" of racketeering activity. The defendants urge that the complaint indicates only a single fraudulent episode carved into its component parts.

GLM argues that it has pled a pattern, and faults the defendants' analysis. GLM argues that the Second Circuit has rejected the "multiple schemes" analysis employed by the defendants, and cites *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986), *cert. denied,* ── U.S. ──, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987). In *Ianniello*, the Second Circuit stated that the multiple scheme requirement was supported neither by the statutory language of RICO, nor by the legislative history. *Id.* at 192 n. 16.

The defendants, on the other hand, urge us to distinguish *Ianniello* as enunciating principles which pertain only to criminal

RICO, and argue that we are not bound by that decision. This argument has merit. *Compare Shopping Mall Investors, N.V. v. E.G. Frances & Co.*, No. 84 Civ. 1469, slip op. at 8 n.* (S.D.N.Y. Jan. 29, 1987) (Keenan, J.) [Available on WESTLAW, DCT database] (distinguishing *Ianniello* as a criminal case "which did not raise the serious problems presented by civil RICO") *and Sybedon Corporation v. Mendell*, 646 F.Supp. 937, 940 (S.D.N.Y.1986) (Haight, J.) (holding that the reasoning of *United States v. Teitler*, 802 F.2d 606 (2d Cir. 1986), which was reaffirmed in *Ianniello*, was "not germane" to civil RICO cases because *Teitler* concerned criminal RICO) *with Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F.Supp. 136 (E.D.N.Y.1987) (McLaughlin, J.) (applying the principles of *Ianniello* in a civil case).

The defendants' victory on this point, however, is a Pyrrhic one. Approaching the question under the method they urge, we find that GLM has sufficiently pled a pattern. The question is a close one, but, construing the complaint in the light most favorable to the plaintiff, we cannot say that GLM could not show a pattern under any proof. Each alleged diversion was a separate transaction, independent of the others, and inflicted an identifiably separate injury. Thus each diversion, of which the predicate acts were a part, may be characterized as a single scheme unto itself. *But see Sybedon Corporation, supra*, 646 F.Supp. at 940 (because the defendants' several acts violated a single contractual promise against self-dealing, the complaint alleged a single scheme).

Moreover, the complaint indicates the threat of continued fraudulent activity. But for the discovery of the alleged fraud, and the termination of the Klein defendants' employment relationship with GLM, we see *no reason* why the defendants would have discontinued such a potentially lucrative course of conduct.

c. Enterprise

The defendants also argue that GLM has failed to plead the element of "enterprise." They claim that GLM's allegation, that various real estate companies associated with the defendants constituted enter[ RICO purposes, is unacceptably ry.

This argument ignores the fact that "enterprise" is defined to include not only corporations and other legal entities, but also any "group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4). Because the complaint has alleged that Klein, Lasky, Fishman, and Horn functioned as a continuing group with a common purpose to divert corporate opportunities away from GLM by improper means, the complaint has sufficiently alleged an "enterprise" for purposes of RICO. *See United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

We have considered the defendants' other arguments against the RICO claims, and find them to be without merit.

CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss is denied, except as to Count Five. The motion to dismiss Count Five is granted, with leave to replead if GLM can allege that it would have consummated the Dara Gardens transaction but for Horn's alleged interference.

SO ORDERED.