APPLE RECORDS, INC., et al., Appellants, v CAPITOL RECORDS, INC., et al., Respondents.

First Department, May 17, 1988

## APPEARANCES OF COUNSEL

*Leonard M. Marks* of counsel *(Paul V. LiCalsi, Alan R. Friedman* and *Thomas P. McCaffrey* with him on the brief; *Gold Farrell & Marks,* attorneys), for appellants.

*Daniel R. Murdock* of counsel *(Charles W. Gerdts, III, Jeffrey A. Conciatori* and *Peter A. Bicks* with him on the brief; *Donovan Leisure Newton & Irvine* and *Latham & Watkins,* attorneys), for respondents.

## OPINION OF THE COURT

CARRO, J.

Twenty-six years ago, just before the Beatles exploded onto the musical scene and were still relatively unknown musicians, they entered into a standard form agreement with defendant EMI Records Limited (EMI), granting EMI the exclusive right to distribute Beatles' recordings worldwide, in return for which the Beatles were to receive certain royalty

payments. This agreement continued under a more complicated 1967 agreement.

The extent of the Beatles' bargaining leverage increased dramatically by 1969 with their enormous musical success and impact on popular culture, resulting in their exercising increased control of the manufacture and distribution of their recordings. Accordingly, through their New York corporation, Apple Records, Inc. (Apple), the Beatles entered into a significantly different relationship with defendants EMI and Capitol Records, as set forth in two related agreements, both dated September 1, 1969. One was a licensing agreement with EMI, under which EMI granted Apple the sole and exclusive right to manufacture, distribute, advertise and sell Beatles' recordings in the United States, Canada and Mexico, including the right to use EMI's master recordings of previously released albums for this purpose, provided that Apple enter into a manufacturing and distributing agreement covering this territory with Capitol Records, Inc.

Accordingly, the second agreement was a manufacturing and distributing agreement with Capitol Records and its subsidiary Capitol Records Distributing Corporation. Apple agreed to have Capitol Records press the Beatles' records at certain fixed prices, F.O.B., and Capitol Records Distributing Corporation, in turn, agreed to buy these pressed records from Apple at a higher fixed price, F.O.B. The agreement purportedly provides that Apple is to retain ownership of the records manufactured in the United States by Capitol Records until same are paid for by Capitol Records Distributing Corporation. When Capitol Records and Capitol Records Distributing Corporation merged in 1970, this buy and sell arrangement became one between Apple and Capitol Records.

Relevant also is the provision in the manufacturing and distributing agreement for an increased differential of approximately 25% between sell and buy prices after August 31, 1972, if certain recordings achieved minimum sales of 500,000 units prior to January 26, 1976. As a result of disputes which arose concerning the payment of the escalated differential, the parties entered into a modification agreement in February 1973, under which it is alleged that Capitol Records agreed to pay the escalated differential. Capitol Records disputes plaintiffs' characterization of the nature and effect of this agreement.

Apple Records and Apple Corps Limited commenced an

action in 1979, asserting causes of action for breach of contract, declaratory judgment and an accounting. Three years later, and before an answer was served, the corporate plaintiffs served an amended complaint, dropping the accounting cause of action, adding claims of fraud, conversion, breach of fiduciary duty, tortious conduct and unjust enrichment and seeking punitive damages. Defendants answered this amended complaint, asserting various counterclaims and affirmative defenses, including that corporate plaintiffs had assigned their rights to payments to the individual Beatles.

Although maintaining that the written agreements alluded to by defendants as assignments were, in fact, merely payment instructions, plaintiffs, nevertheless, moved to serve a second amended complaint to add as plaintiffs George Harrison, Richard Starkey and Yoko Ono Lennon, as the executrix of the estate of John Lennon. (Former Beatles member Paul McCartney has chosen not to participate in this action.) Plaintiffs' motion also sought to supplement the claims to cover the period since commencement of the action in 1979 and to add specific requests for relief to terminate defendants' rights to manufacture and distribute Beatles' recordings and to have the master recordings of Beatles' performances transferred to plaintiffs. Plaintiffs' motion was, for the most part, granted with the court limiting plaintiffs' claims for punitive damages to the fraud and conversion causes of action.

The resulting second amended and supplemental complaint sets forth nine causes of action. The first and second causes of action are for breach of the 1969 agreement and the 1973 modification agreement, respectively. The third and fourth causes of action seek declaratory judgments as to plaintiffs' rights to escalated payments under the 1969 and 1973 agreements, respectively. The fifth cause of action is for fraud. The sixth cause of action alleges breach of fiduciary duty. The seventh cause of action is for conversion. The eighth cause of action alleges an unelaborated "tortious conduct" theory of recovery while the ninth cause of action alleges that defendants have been unjustly enriched by their wrongful acts.

Prior to serving an answer, defendants moved, pursuant to CPLR 3211 (a) (7), to dismiss the third through ninth causes of action for their failure to state valid causes of action. The motion court granted defendants' motion to dismiss, to the extent of dismissing the third, fourth, fifth, seventh, eighth and ninth causes of action, with leave to replead that part of the fifth cause of action which alleges that defendants fraudu-

lently induced plaintiffs to release the album "Sometime in New York City". The sixth cause of action was sustained based on the court's conclusion that the facts pleaded were sufficient to raise "a colorable issue that an informal fiduciary relationship exists" between the parties. Plaintiffs, as limited by their brief and notice of appeal, appeal from the court's dismissal of the third, fourth, fifth and seventh causes of action. Defendants have not cross-appealed from the denial of their motion to dismiss the sixth cause of action for breach of fiduciary duty.

■ The motion court did not abuse its discretion in dismissing the third and fourth causes of action for declaratory judgments. A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract. *(James v Alderton Dock Yards,* 256 NY 298, 305, *rearg denied* 256 NY 681; *Young & Co. v Fleischman,* 85 AD2d 571.)* Such is the case here. In fact, plaintiffs concede that these causes of action parallel the breach of contract claims and merely seek a declaration of the same rights and obligations as will be determined under the first and second causes of action. Nevertheless, they argue that a declaration from the court as to their future rights to escalated payments under the agreements is necessary, should their contract causes of action fail on the grounds of laches and/or Statute of Limitations.

The laches defense is an equitable defense and applicable, therefore, only to the equitable cause of action for breach of fiduciary duty. Assuming, arguendo, some merit to defendants' Statute of Limitations defense, the court's determinations on the breach of contract claims will merely be confined to those periods of time not barred by the applicable Statute of Limitations. Such determinations will still sufficiently guide the parties on their future performance of the contracts, thereby obviating any need for declaratory judgments. Consequently, since the first and second causes of action will provide plaintiffs with a full and adequate alternative remedy, the court did not abuse its discretion in dismissing the declaratory judgment actions.

■ As to the fifth and seventh causes of action, however, we agree with plaintiffs that those should be reinstated. Except to grant plaintiffs leave to replead the fifth cause of action, insofar as it relates to the inducement to release the album "Sometime in New York City", the motion court dismissed

this cause of action for fraud, concluding that as the allegations of fraud were merely part and parcel of the causes of action for breach of contract, there was no fraud action separate and distinct from the actions in contract.

Courts have long grappled with the difficulty of formulating a precise test to determine under what circumstances a party to a contract may be held liable in tort to another party thereto as a result of some clash in the contractual relationship. While no precise test has ever evolved, it has at least been established that the focus is not, as the motion court misapprehended, on whether the tortious conduct is separate and distinct from the defendants' breach of contractual duties, for it has long been recognized that liability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligations. (See, Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382, 397.) Rather, the focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement. Thus, "unless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be a breach of the contract, there is no tort, since there is no duty to be violated" (supra, at 394).

An oft used example is when a special relationship of "trust and confidence" exists between the contracting parties (such as is typically found between bailor and bailee, lawyer and client, principal and agent, public carrier and passenger or innkeeper and guest), so that born of this relation is a special duty, which, when betrayed, is made actionable in tort (supra, at 394; see also, Charles v Onondaga Community Coll., 69 AD2d 144, 146, appeal dismissed 48 NY2d 650). These socially imposed legal duties are not, however, exclusive to relationships of trust and confidence, but may also arise from special extraneous circumstances and from the "legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud." (Rich v New York Cent. & Hudson Riv. R. R. Co., supra, at 398; see also, Albemarle Theatre v Bayberry Realty Corp., 27 AD2d 172, 176.)

In Albemarle Theatre (supra), plaintiff, the landlord and owner of a movie theatre, was found to have stated a valid cause of action for intentional destruction of the value of its theatre property by virtue of defendant tenant's scheme to

show only low quality movies in order to improve the position of neighboring competitors, while destroying the value of plaintiff's theatre. This court concluded that such conduct "constituted not only a breach of their contract with the plaintiff, but a violation of their legal common-law duty extraneous to the contract not to act wilfully to destroy the property of another, including the plaintiff" *(supra,* at 177).

Valid causes of action in tort were also stated in *North Shore Bottling Co. v Schmidt & Sons* (22 NY2d 171, 179-180) based on allegations that defendant made plaintiff the exclusive distributor of beer in a specific area, intending only to give plaintiff's territory to a favored party once plaintiff established his business, and in *S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.* (108 AD2d 351, 352-355) based on defendant creditor's unreasonable withholding of its consent required by contract for plaintiff to transfer certain property, ultimately causing plaintiff to sell at a substantially reduced price.

Defendants' assertions to the contrary, the holdings in these cases are not predicated on one party to the contract acting in concert with third parties to destroy plaintiff's property or acting to benefit third parties. Such a limitation has never been declared in the case law and would, in fact, be inconsistent with the recent case, *Meyers v Waverly Fabrics* (65 NY2d 75). There, the Court of Appeals acknowledged both that plaintiff had stated a valid cause of action against the defendant for unfair competition stemming from defendant's misrepresentation that a design plaintiff sold him was his and that this tort was actionable as against defendant alone, irrespective of whether or not defendant permitted third parties to make uses of the design outside the intent of the contract *(supra,* at 80, n 2).

Viewed in the context of the above cases, we disagree that the fifth cause of action for fraud merely restates the breach of contract claims. This cause of action is premised on defendants' improper disposition of Beatles' recordings and their fraudulent concealment and misrepresentation of those transactions through the rendering of false statements and accountings. Specifically, it is alleged that defendants, who had claimed to have "scrapped", that is, destroyed as damaged or as not selling, over 19,000,000 Beatles' recordings, in fact, sold millions of such recordings in secret transactions and pocketed the proceeds. Plaintiffs also allege that defendants distributed an excessive amount of promotional copies of Beatles' record-

ings, aimed not at gaining any needed publicity for the Beatles, but instead with the design to benefit defendant Capitol Records, who allegedly used the promotional copies as currency to gain promotional advantages for other of its artists. As many of these promotional records were, contrary to the normal practice, not "drilled", i.e., marked, to prevent retail sale and/or subsequent return to Capitol Records for credit, it is argued that this practice also served to dilute the legitimate market for sale of Beatles' recordings.

Plaintiffs argue that by these actions defendants have breached the following specific duties extraneous to their contractual obligations: their duties as fiduciaries to plaintiffs; their duties as bailees of Beatles' recordings; and, their duty to respect plaintiffs' property rights.

In upholding the sixth cause of action for breach of fiduciary duties, the motion court acknowledged that while the contract did not establish a formal fiduciary relationship, the pleadings were sufficient to raise an issue as to the existence of an informal one. A fiduciary relationship, whether formal or informal, "is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another * * * [and] might be found to exist, in appropriate circumstances, between close friends (see *Cody v Gallows,* 28 Misc 2d 373) or even where confidence is based upon prior business dealings (see *Levine v Chussid,* 31 Misc 2d 412)." *(Penato v George,* 52 AD2d 939, 942, *appeal dismissed* 42 NY2d 908.)

The business dealings between Capitol Records and the Beatles date back to 1962, when the still unacclaimed Beatles entrusted their musical talents to defendant Capitol Records. It is alleged that this relationship proved so profitable to defendant that at one point the Beatles constituted 25 to 30% of its business. Even after the Beatles attained their remarkable degree of popularity and success, they still continued to rely on Capitol Records for the manufacture and distributing of their recordings. It can be said that from such a long enduring relation was born a special relationship of trust and confidence, one which existed independent of the contractual duties, and one which plaintiffs argue was betrayed by fraud in secretly selling records claimed as scrapped and in diluting the market and exploiting the Beatles' popularity with excessive distribution of promotional copies to benefit other aspects of defendants' business. Plaintiffs' allegations, then, are sufficient to support their claim that an injury separate and

distinct from the breach of contract has been committed and is actionable as a tort.

Further support for this fraud cause of action rests on plaintiffs' claims that defendants also breached their duty as bailees of the Beatles' recordings and their duty to respect plaintiffs' property rights. Plaintiffs argue that pursuant to certain provisions of the contract they retained ownership rights to the Beatles' recordings until same were paid for by Capitol Records. During this interim period, Capitol Records was entrusted with the care and custody of these recordings. These claims in conjunction with plaintiffs' allegations of defendants' misappropriation of Beatles' recordings for their own benefit and in total disregard of plaintiffs' ownership rights, are sufficient to state a valid cause of action for fraud based on violations of duties distinct from defendants' contractual obligations. *(See, Rich v New York Cent. & Hudson Riv. R. R. Co.,* supra, 87 NY, at 397-398; *Albemarle Theatre v Bayberry Realty Corp.,* supra, 27 AD2d, at 177.) The fifth cause of action should, therefore, be reinstated.

As to the seventh cause of action for conversion, we note that were we limited to reviewing merely the pleadings, which allege that defendants have unlawfully withheld and converted to their own use certain "funds" to which plaintiffs had a superior right of possession, the complaint would be insufficient to state a tort cause of action truly independent of the contract claims, which seek moneys due under the "buy and sell" agreement. *(See, Peters Griffin Woodward v WCSC, Inc.,* 88 AD2d 883, 884.) However, plaintiffs have supplemented these pleadings with additional evidentiary materials, which we may review "to preserve inartfully pleaded, but potentially meritorious, claims" *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 635).

As supplemented by the affidavit in opposition to the motion to dismiss and by the provisions of the 1969 manufacturing and distributing agreement itself, the complaint does allege a valid cause of action for the unlawful conversion of the Beatles' recordings. Plaintiffs' argument that they maintained legal title to the records until same were bought by Capitol Records, finds support, as noted above, in the 1969 agreement. Furthermore, the allegations that defendants secretly sold the records to others without making any payments to plaintiffs and that they falsely reported the records as scrapped are sufficient to support a cause of action for conversion.

In concluding that the "buy and sell" arrangement was a fiction and that plaintiffs never bought or intended to exercise dominion or control over the records, the motion court clearly went beyond the permissible scope of inquiry on a motion to dismiss for failure to state a cause of action. On such a motion, a court is to deem the plaintiff's allegations, assertions and documentations as true and draw all favorable inferences in plaintiff's favor. *(Sanders v Winship,* 57 NY2d 391, 394.) Under the proper mode of inquiry, it is clear that plaintiffs have made out a valid cause of action for conversion and that the seventh cause of action should also be reinstated.

Accordingly, the order of the Supreme Court, New York County (Michael J. Dontzin, J.), entered May 1, 1987, which granted defendants-respondents' motion, pursuant to CPLR 3211 (a) (7), to dismiss the third, fourth, fifth, seventh, eighth and ninth causes of action, with leave to plaintiff to replead the fifth cause of action, insofar as it relates to the inducement to release the "Sometime in New York City" album, should be unanimously modified, on the law, to the extent of denying the defendants-respondents' motion to dismiss the fifth and seventh causes of action, reinstating those causes of action, and the order should otherwise be affirmed, without costs.

KUPFERMAN, J. P., SANDLER and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on May 1, 1987, unanimously modified, on the law, to the extent of denying the defendants-respondents' motion to dismiss the fifth and seventh causes of action, reinstating those causes of action, and otherwise affirmed, without costs and without disbursements.